IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| VANDERBILT MORTGAGE AND FINANCE, INC. | § § § | |
| Plaintiff | § | CIVIL ACTION NO. 2:09cv312 |
| | § | |
| VS. | § | |
| | § | |
| CEASER FLORES, Correctly known as Cesar Flores, and ALVIN E. KING | § § | Case Removed from 79th Judicial District Court, Jim Wells County, Texas |
| Defendants | § | No. 09-08-48240-CV |
| | § | |
| AND | § | |
| | § | JURY DEMANDED |
| MARIA M. TREVINO | § | |
| Intervenor | § | |
| | § | |
| VS | § | |
| | § | |
| CLAYTON HOMES, INC.; | § | |
| CMH HOMES, INC.; | § | |
| VANDERBILT MORTGAGE AND | § | |
| FINANCE, INC.; KEVIN T. CLAYTON; | § | |
| JOHN WELLS; AND | § | |
| BENJAMIN JOSEPH FRAZIER | § | |

**DEFENDANT KEVIN T. CLAYTON'S MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant Kevin T. Clayton moves to dismiss Intervenor Maria Trevino's claims against him for lack of personal jurisdiction.

## I.     INTRODUCTION

Mr. Clayton is a resident of the State of Tennessee. He does not maintain real or personal property in the State of Texas, and makes only sporadic business trips to the State of Texas in his capacity as a board member of one of the corporate entities that has also been named as Intervention-Defendants by Ms. Trevino. Mr. Clayton has no personal involvement

whatsoever with or personal knowledge of the allegations made by Ms. Trevino in connection with the sale of a manufactured home in the State of Texas.  Mr. Clayton simply does not have the requisite contacts with the State of Texas that would properly allow the exercise of personal jurisdiction over him.  The claims against Mr. Clayton must, therefore, be dismissed pursuant to Rule 12(b)(2).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.     The original foreclosure suit filed by Vanderbilt.

On August 4, 2009, Plaintiff/Counter-Defendant Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") brought suit in state court in Jim Wells County, seeking to repossess and foreclose on a manufactured home purchased by Cesar Flores and Alvin King ("Defendants").  (Ex. A.)  In order to purchase their home, Defendants had enlisted Maria Trevino to pledge her land as collateral to secure their debt to Vanderbilt.  (*See* Ex. B at Exs. A, B thereto.)  The state court suit filed by Vanderbilt did not seek to foreclose on Ms. Trevino's land.  Rather, it sought to foreclose only the personal property of Defendants: the manufactured home they had purchased with a loan from Vanderbilt.  (Ex. A.)

### B.     Defendants' counterclaims to the foreclosure suit.

On September 18, 2009, Defendants answered the foreclosure suit and asserted several counterclaims, alleging that their debt to Vanderbilt had been extinguished when Vanderbilt and Intervention-Defendant CMH Homes, Inc. released a deed of trust and mechanic's lien on the real property owned by Intervenor Maria Trevino.  (*E.g.*, Ex. B ¶¶ 6.03, 7.01, 8.01 and Exs. A, B thereto.)  In essence, Defendants alleged that Vanderbilt's foreclosure suit was improper because they no longer owed any debt to Vanderbilt.  (*Id.*)  Defendants also alleged that Vanderbilt knowingly misrepresented the amount of the debt due under the contract

2

and, thus, fraudulently collected certain sums over the last several years.  (*Id.*)  Defendants characterized their allegations as violations of the Texas Debt Collection Act and the Texas Deceptive Trade Practices Act.  (*Id.* ¶¶ 8.01-8.04.)  In addition, Defendants alleged that Vanderbilt committed fraud by knowingly misrepresenting the amount of the debt and that Vanderbilt's actions, in total, constitute a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*  (*Id.* ¶¶ 9.01, 10.01-10.08d.)

**C.     Maria Trevino's Intervention against Mr. Clayton and other defendants.**

On October 20, 2009, Ms. Trevino intervened in the state court action and asserted new claims against Intervention-Defendants Clayton Homes, Inc., CMH Homes, Inc., Vanderbilt, Kevin T. Clayton, Ben Frazier and John Wells.[1]  Ms. Trevino alleged that her name was forged on the applicable loan and lien documents relating to Defendants' purchase of their manufactured home and that all the named Intervention-Defendants were involved in a civil conspiracy and violated RICO during the transaction with Defendants.  (Ex. C.)

Mr. Clayton is President and CEO of Clayton Homes, Inc. ("CHI") and sits on the board of CMH Homes, Inc. ("CMH").  (Clayton Decl., attached as Ex. D, ¶ 1.)  Mr. Clayton is a resident of the State of Tennessee, not the State of Texas.  (*Id.* ¶¶ 2, 4.)  He was not personally involved in the sales transaction at issue in this suit.  (*Id.* ¶ 9.)

**D.     CMH Homes, Inc.'s removal of the entire state court action.**

On November 17, 2009, CMH removed the entire state court action to this Court in light of the federal RICO claim asserted by Ms. Trevino.  Mr. Clayton, who intends to consent to the removal, moves to dismiss the claims asserted against him because this Court lacks

---

[1]   John Wells and Ben Frazier were employees of CMH Homes, Inc. during the time of the transactions at issue. (Ex. C ¶¶ 5.05, 5.06.)  They are no longer employees of CMH Homes, Inc. and, on information and belief, have not been served with the Intervention.

personal jurisdiction over him.[2]

### III.   ARGUMENT AND AUTHORITIES

Because Mr. Clayton has no minimum contacts with the State of Texas and exercising personal jurisdiction over him would offend traditional notions of fair play and justice, the claims by Ms. Trevino against Mr. Clayton must be dismissed. *See Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (noting that the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident defendant).

**A.   Establishing personal jurisdiction over a nonresident defendant is a significant hurdle.**

A federal court may only exercise personal jurisdiction over a nonresident defendant if (1) the state's long arm statute confers personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction is consistent with due process. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis" for courts in the Fifth Circuit. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Due process "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).

To satisfy the due process inquiry, Ms. Trevino must demonstrate that Mr.

---

[2] Mr. Clayton intends to file his Notice of Consent to Removal with this Court. Filing such a notice does not waive his right to contest personal jurisdiction. *See El Paso Healthcare Sys., Ltd. v. Molina Healthcare of N.M., Inc.*, No. 3:09-CV-54-KC, 2009 WL 1743221, at *4 n.2 (W.D. Tex. May 1, 2009) ("[I]t is well-settled that removal of a case to federal court does not waive a party's right to contest personal jurisdiction."); *see also Alliantgroup, L.P. v. Feingold*, Civ. A. No. H-09-0479, 2009 WL 1109093, at *5 (S.D. Tex. Apr. 24, 2009) (holding that objection to personal jurisdiction is not waived so long as defendant has not made general appearance in state court prior to removal).

Clayton has "minimum contacts" with the State of Texas and that the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980). For "minimum contacts" with the State of Texas to be established, Mr. Clayton must have purposefully availed himself of the benefits and protections of Texas in ways that would allow him to "reasonably anticipate being haled into court" here. *See id.* at 297; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### 1.    General jurisdiction over a nonresident defendant.

The exercise of personal jurisdiction requires, as a threshold matter, that the claimant establish one of two types of minimum contacts. General jurisdiction requires that the defendant's contacts with the forum state be "substantial, continuous, and systematic." *Johnston*, 523 F.3d at 609. The "'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Id.* (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A*, 249 F.3d 413, 419 (5th Cir. 2001)). "Random, fortuitous, or attenuated contacts are not sufficient." *Id.* at 610 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007)); *see also Burger King Corp.*, 471 U.S. at 476. Although "[g]eneral jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed," the contacts must be reviewed in toto, and not in isolation from one another. *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986).

### 2.    Specific jurisdiction over a nonresident defendant.

If a defendant has relatively few contacts with the forum state, a court may still exercise specific jurisdiction "in a suit arising out of or related to the defendant's [specific] contacts with the forum." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir.

2006) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413-14 (1984)). For specific jurisdiction, the minimum contacts inquiry focuses on the relationship among the defendant, the forum, and the pending litigation, requiring that litigation arise out of or relate to the defendant's specific contacts with the forum. *Id.*; *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414. Specific jurisdiction arises when a non-resident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Burger King Corp.*, 471 U.S. at 472).

Even if one of these tests is met, personal jurisdiction nonetheless is improper if it would "'offend traditional notions of fair play and substantial justice.'" *See World-Wide Volkswagen Corp.*, 444 U.S. at 292 (quoting *Int'l Shoe Co.*, 326 U.S. at 316); *Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001). Because the policy behind limiting jurisdiction is to allow a defendant to reasonably expect to be sued in the forum, the contacts with the state potentially giving rise to jurisdiction must still amount to "fair play." Ms. Trevino cannot meet her burden in any regard, and the Court must dismiss all of her claims against Mr. Clayton.

**B.     Mr. Clayton has no substantial, continuous, or systematic contacts with the State of Texas that would give rise to general jurisdiction over him.**

**1.     Mr. Clayton lives and works in the State of Tennessee and makes only occasional business trips to the State of Texas that are unrelated to the allegations in this suit.**

There can be no dispute that this Court does not have general jurisdiction over Mr. Clayton. Mr. Clayton is a resident of the State of Tennessee. (Clayton Decl. ¶ 2.) Mr. Clayton does not reside in the State of Texas and does not maintain a residence or place of business in the state of Texas. (*Id.* ¶ 4.) He briefly resided in Texas during the early 1990s in his capacity as an employee of CMH Manufacturing, Inc., but left the state in 1994, well before the

alleged events made the basis of this lawsuit.  Mr. Clayton moved to the State of Tennessee in 1994.  (*Id.* ¶¶ 2, 4.)  At that time he sold his home, the only real property he ever owned in the State of Texas, and has not owned any property, real or personal, tangible or intangible, in the State of Texas at any time since.  (*Id.* ¶ 4.)

Since Mr. Clayton moved to Tennessee in 1994, he has not been physically present in the State of Texas except for occasional trips in his corporate capacity and for medical reasons.  (Clayton Decl. ¶¶ 5-6.)  Mr. Clayton's trips in his corporate capacity are not related to any of the allegations in this suit.  (*See  id.* ¶¶ 5, 9.)  Mr. Clayton's trips for medical purposes are insufficient to establish personal jurisdiction over him.  *See Nabulsi v. Nahyan*, No. H-06-2683, 2009 WL 1658017, at *21 (S.D. Tex. June 12, 2009) (holding that the fact that the defendant was physically present in Texas for tourism and medical treatment for three months nearly every year for a period of 10 years is insufficient to establish general personal jurisdiction).  Mr. Clayton's sporadic contacts with the State of Texas are not the substantial, continuous and systematic contacts that are required to confer personal jurisdiction.  *See Johnston*, 523 F.3d at 609.

### 2. Mr. Clayton's business trips in his role as corporate executive do not give rise to personal jurisdiction over Mr. Clayton in his individual capacity.

It is important to distinguish between Mr. Clayton's contacts with the State of Texas in his capacity as an executive, and Mr. Trevino's attempts to obtain personal jurisdiction over him as an individual.  It is well-established that "'jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation.'"  *Stuart*, 772 F.2d at 1197 n.11 (quoting *Lehigh Valley Indus., Inc. v. Birenbaum*, 389 F. Supp. 798, 803-04 (S.D.N.Y.), *aff'd*, 527 F.2d 87 (2d Cir. 1975)).  Under the fiduciary shield doctrine, the fact that Mr. Clayton is a member of the board of directors of CMH, a corporation over which this Court does have personal jurisdiction, does not create personal jurisdiction over Mr. Clayton as an individual.  *See id.* at 1197 ("[A]n

individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation . . . .").

The fiduciary shield doctrine also forecloses this Court from taking general jurisdiction over Mr. Clayton based on trips and contacts that he may have with the state of Texas in his role as a member of the board of directors of CMH.  *See Ragan & Massey, Inc. v. Voluntary Purchasing Groups, Inc.*, No. 4:09-CV-00039, 2009 WL 3157468, at *4-5 (E.D. Tex. Sept. 28, 2009) (holding that under the fiduciary shield doctrine, defendant's routine visits to Texas for business purposes could not constitute continuous and systematic contacts for the purposes of personal jurisdiction); *Brothers v. Print, Inc.*, No. 3:07-CV-0415-B, 2007 WL 3331974, at *8 (N.D. Tex. Nov. 8, 2007) (noting that evidence that non-resident CEO paid a few visits to the Dallas office of his company was "no evidence of continuous and systematic contact").  If a non-resident defendant's travels to Texas are made in their capacity as an officer or executive, these trips are insufficient to confer personal jurisdiction upon the defendant.  *See Crandell v. Arthurs*, No. 4:06-CV-166, 2007 WL 173865, at *4 (E.D. Tex. Jan. 19, 2007) (holding that a CEO's visits to a trade show in Texas as a representative of his company and attendance at business meetings in Texas could not give rise to personal jurisdiction over the CEO in his individual capacity); *Burchfield v. Stein*, No. 3:01-CV-2529, 2002 WL 318341, at *7 (N.D. Tex. Feb. 27, 2002) (holding that the fiduciary shield doctrine precluded the court from exercising personal jurisdiction over non-resident CEO based on CEO's communications with resident plaintiffs by phone and email and CEO's regular trips to Texas in his corporate

capacity).  The fact that Mr. Clayton occasionally visits the State of Texas for routine business trips does not provide a basis for personal jurisdiction.

**C.      This Court also lacks specific jurisdiction over Mr. Clayton.**

This Court does not have specific jurisdiction over Mr. Clayton because he has not purposefully directed any activities at the State of Texas, and Ms. Trevino's claims do not arise from any activities conducted by Mr. Clayton.  Ms. Trevino cannot establish that personal jurisdiction is proper over Mr. Clayton because she does not allege specific facts regarding Mr. Clayton's actions that would give rise to such jurisdiction.  Resting on her aggregate allegations is constitutionally insufficient.  *See Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 793 (5th Cir. 2007) (holding that "[i]t is not enough to simply rest on the use of the collective term, 'Defendants,' in the allegations" in order to get specific personal jurisdiction over a non-resident defendant (citing *Rush v. Savchuk*, 444 U.S. 320, 332-33 (1980) (holding that aggregating the defendant into a collective of "defending parties" did not satisfy federal due process)).

A plaintiff bringing multiple claims arising from different contacts of the defendant must establish specific jurisdiction for each claim.  *See Seiferth*, 472 F.3d at 274-75. Ms. Trevino has not specified whether all of her claims against Mr. Clayton arise out of the same contacts or whether they arise from separate contacts that require individual analysis; therefore, this Court may assume that Trevino "intends that the same contacts support each of [her] claims." *See Ragan & Massey, Inc.*, 2009 WL 3157468, at *6.  Ms. Trevino alleges that Mr. Clayton is "doing business" in Texas and has been "granted, sold, and conveyed property situated in virtually every county in the State of Texas." (Ex. C ¶ 2.05.)  Ms. Trevino also

appears to base her assertion of personal jurisdiction on the fact that Mr. Clayton is named as the trustee on Deeds of Trust executed as part of manufactured home sales. (*Id.* ¶ 5.02.)

**1.     The fact that Mr. Clayton is identified as the trustee in deeds of trust in the State of Texas does not subject him to personal jurisdiction here.**

Texas law makes clear that being named as trustee in a deed of trust does not convey an interest in real property to the trustee.  Rather, it identifies the person responsible for exercising the power of sale on behalf of the lienholder in the event that the granting party defaults.  *See* TEX. PROP. CODE ANN. § 51.0074 (Vernon Supp. 2009) (providing that the only duty that may be assigned to a trustee under a deed of trust is the ability to exercise the power of sale as defined in the security instrument, and that the trustee may not be held to the obligations of a fiduciary of the mortgagee); *see also* 15 W. Mike Baggett, TEX. PRACTICE: TEXAS FORECLOSURE LAW AND PRACTICE § 2.38 (2001) ("The trustee under a deed of trust has limited authority to act as the mortgagor's agent only in the sale of the property.").  Notwithstanding Ms. Trevino's mischaracterization, the fact that Mr. Clayton is named as trustee in certain deeds of trust does not mean that any property has been granted, sold or conveyed to Mr. Clayton.  Ms. Trevino's attempt to distort the record is, nevertheless, unavailing.  Even if Mr. Clayton were somehow deemed to be doing business in Texas in connection with being named the trustee of the deeds of trust, the fiduciary shield doctrine precludes the exercise of personal jurisdiction over Mr. Clayton with respect to business done as a corporate executive. *See Stuart*, 772 F.2d at 1197.

Furthermore, being named as trustee is similar to signing an instrument on behalf of a corporate entity—it is a role only done on behalf of the corporation and not on behalf of the individual.  As such, his role in his corporate capacity is not sufficient to confer personal jurisdiction over him under Texas law. *See Peavy v. Striebel*, Civ. A. No. G-06-443, 2007 WL

528184, at *3 (S.D. Tex. Feb. 14, 2007) ("[T]he State cannot gain personal jurisdiction over Defendant merely because he signed contracts in his official capacity.").  In *Peavy*, Frederick Ross Peavy sued Stephen Striebel for personal injuries arising from the collapse of two barstools purchased by Mr. Peavy that were distributed by FDL, Inc.  *Id.* at *1.  Mr. Striebel was an Indiana resident and the sole owner and shareholder of FDL, Inc.  *Id.*  Mr. Peavy based his attempted assertion of personal jurisdiction over Mr. Striebel on the fact that Mr. Striebel had signed a distributorship agreement.  *Id.* at *2-3.  The court however, held that the fact that Mr. Striebel signed a contract in his capacity as the president of FDL, Inc. could not give the court personal jurisdiction over Mr. Striebel.  *Id.* at *3.  As with Mr. Striebel, "this Court may not exercise jurisdiction over [Mr. Clayton] as an individual" when his only—limited—contact with the state has been in a corporate capacity unrelated to the allegations in Trevino's complaint.  *Id.*

2.      **There is no nexus between Mr. Clayton's sporadic business trips to the State of Texas and Ms. Trevino's allegations.**

Even if Mr. Clayton occasionally "was present in Texas in his capacity as [board member] . . . are not alone sufficient to establish purposeful availment" for purposes of specific jurisdiction.  *See Ragan & Massey, Inc.*, 2009 WL 3157468, at *6.  There must be some greater nexus between Mr. Clayton's alleged contacts with the State of Texas and Ms. Trevino's claims that the liens filed on her real property were forged.  Ms. Trevino, however, does not allege that any of her claims arise from Mr. Clayton's physical presence in the State of Texas at any time.  It is also beyond dispute that Mr. Clayton was not—and has never been—involved in the sale of the manufactured home to Defendants.  (Clayton Decl. ¶ 9.)  Mr. Clayton did not sign any of the instruments on his own behalf and was not a party to any contract reflected in or associated in any way with the instruments at issue.  (*Id.* ¶ 7.)

3.      **Ms. Trevino's allegations of a conspiracy involving Mr. Clayton do not support the exercise of personal jurisdiction.**

Ms. Trevino's allegations that Mr. Clayton was part of a conspiracy that committed intentional torts against her is also insufficient to establish specific jurisdiction over Mr. Clayton. *See Weinberg v. Nat'l Football Players League Ass'n*, No. 3:06-CV-2332-B ECF, 2008 WL 4808920, at *4-6 (N.D. Tex. Nov. 5, 2008) (citing *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995)) ("[W]e decline to recognize assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state."); *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 5 (5th Cir. 2004) (noting that the plaintiff had to show that defendant "individually, and not as part of the conspiracy, had minimum contacts with Texas"); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999) (same). Ms. Trevino has not alleged that the purported conspiracy arose out of any of Mr. Clayton's specific contacts with the State of Texas, nor has she alleged any conspiratorial act of Mr. Clayton's that was related to or arose out of Mr. Clayton's contacts with the State of Texas. (*See* Ex. C ¶¶ 5.02, 5.03.)

"[B]are allegations of conspiracy without factual support do not suffice to establish minimum contacts for personal jurisdiction purposes." *Weinberg*, 2008 WL 4808920, at *6 (citing *Am. Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 666 n.16 (5th Cir. 2004)). The acts of alleged co-conspirators cannot be imputed to Mr. Clayton for jurisdictional purposes. *See Weinberg*, 2008 WL 4808920, at *6. Ms. Trevino's allegations of conspiracy are insufficient to establish specific jurisdiction over Mr. Clayton. *See Thomas v. Kadish*, 748 F.2d 276, 282 (5th Cir. 1984) (finding that the conclusory allegations of conspiracy by California defendants based upon their acts in California, even with alleged effects in Texas, were insufficient to establish minimum contacts); *Nat'l Architectural Prods. Co. v. Atlas-Telecom Servs. USA, Inc.*, No. 3:06-CV-0751-G, 2007 WL 2051125, at *8 (N.D. Tex. Jul. 13,

12

2007) (rejecting personal jurisdiction where "[a]ll that the plaintiff has alleged is that a conspiracy existed among the defendants and that the effect of that conspiracy was felt in Texas"); *WRR Indus., Inc. v. Prologis*, No. 3:04-CV-2544-L, 2006 WL 247894, at *7 n.8 (N.D. Tex. Feb. 2, 2006) (rejecting specific jurisdiction based on the defendant's alleged status as a co-conspirator).

**D.    The exercise of personal jurisdiction over Mr. Clayton would offend traditional notions of fair play and substantial justice.**

Mr. Clayton did not purposely avail himself of any of the benefits and protections of the State of Texas. *See Int'l Shoe Co.*, 326 U.S. at 316. Mr. Clayton has had no involvement in any of the transactions or events that the Intervenor makes the basis of her claims and could not reasonably have anticipated being haled into a Texas court to defend a lawsuit. *See World-Wide Volkswagen Corp.*, 444 U.S. at 297. Ms. Trevino should not be permitted to hale Mr. Clayton before this Court merely because of his relationship to corporate entities that are also Intervention-Defendants. Ms. Trevino failed to allege *any* facts that would legitimately give rise to personal jurisdiction over Mr. Clayton. (*See* Ex. C.) There are none. Allowing Ms. Trevino to be able to maintain this suit against Mr. Clayton under these circumstances would "offend traditional notions of fair play and substantial justice." *See World-Wide Volkswagen Corp.*, 444 U.S. at 292.

**IV.    CONCLUSION**

For the reasons set forth above, this Court lacks personal jurisdiction over Kevin T. Clayton. All of the claims against Mr. Clayton should be dismissed and he should be granted such other and further relief to which he is justly entitled.

Dated:  November 25, 2009                    Respectfully submitted,

                                            _____/s/ Jorge C. Rangel_____
                                             Jorge C. Rangel
                                             Attorney-in-Charge
                                             State Bar No. 16543500
                                             Federal I.D. No. 5698
                                             Jaime S. Rangel
                                             State Bar No. 24033759
                                             Federal I.D. No. 32226
                                             The Rangel Law Firm, P.C.
                                             615 Upper N. Broadway, Suite 2020
                                             Corpus Christi, Texas  78477
                                             Telephone: (361) 883-8500
                                             Facsimile: (361) 883-2611
                                             Email: jorge.c.rangel@rangellaw.com
                                             Email: jaime.rangel@rangellaw.com

                                             ATTORNEYS FOR KEVIN T. CLAYTON

OF COUNSEL:

BAKER BOTTS L.L.P.
Stephen G. Tipps
Texas State Bar No. 20070500
Federal I.D. No. 00805
Cristina Espinosa Rodriguez
State Bar No. 00793701
Federal I.D. No. 20575
Jennifer A. Powis
State Bar No. 24041716
Federal I.D. No. 605931
One Shell Plaza
910 Louisiana
Houston, Texas 77002-4995
Telephone:  (713) 229-1188
Facsimile:  (713) 229-7788
E-mail: stephen.tipps@bakerbotts.com
E-mail: cristina.rodriguez@bakerbotts.com
E-mail: jen.powis@bakerbotts.com

## CERTIFICATE OF SERVICE

I certify that true and correct copy of this pleading is being served upon all counsel of record by mailing copies via certified mail, return receipt requested this 25th day of November 2009, addressed as follows:

J. Javier Gutierrez
The Gutierrez Law Firm, Inc.
700 East 3rd Street
Alice, Texas  78332

David L. Rumley
Wigington Rumley, LLP
800 N. Shoreline
14th Floor - South Tower
Corpus Christi, Texas 78401

James W. Upton
K. Clifford Littlefield
Upton, Mickits, & Heymann, L.L.P.
Frost Bank Plaza
802 N. Carancahua, Suite 450
Corpus Christi, Texas 78470


___/s/ Jorge C. Rangel_____
Jorge C. Rangel

15