# EXHIBIT "A"

Case 2:09-cv-00332 Document 35-1 Filed in TXSD on 03/28/10 Page 1 of 20

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| VANDERBILT MORTGAGE AND FINANCE, INC.<br>Plaintiff | § § § § | |
| VS. | § § | |
| CEASER FLORES, Correctly known as Cesar Flores, AND ALVIN E. KING<br>Defendants | § § § § | |
| AND | § § | C.A. NO. 2:09-CV-00312 |
| MARIA M. TREVINO<br>Intervenor | § § § § | |
| VS. | § § | |
| CLAYTON HOMES, INC.;<br>CMH HOMES, INC.;<br>VANDERBILT MORTGAGE AND FINANCE, INC.; KEVIN T. CLAYTON;<br>JOHN WELLS; AND<br>BENJAMIN JOSEPH FRAZIER | § § § § § § | |

## FIRST AMENDED INTERVENTION OF MARIA M. TREVINO

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Maria Trevino, Intervenor herein, complaining of Clayton Homes, Inc., CMH Homes, Inc., Vanderbilt Mortgage and Finance, Inc., Kevin T. Clayton, John Wells and Benjamin Joseph Frazier, Defendants herein, and for her cause of action would show as follows:

## I.
## DISCOVERY TRACK

1.01 Intervenor pleads that this case should be assigned to Discovery Track Three.

## II.
## THE PARTIES

2.01   Intervenor, Maria M. Trevino is a citizen of the United States and is a resident of the state of Texas.

2.02   Defendant, Clayton Homes, Inc., is a foreign corporation, incorporated in the state of Delaware, doing business, engaging in business and transacting business in the State of Texas and has been served and answered herein.

2.03   Defendant, CMH Homes, Inc., is foreign corporation, incorporated in the state of Tennessee, doing business, engaging in business and transacting business in the state of Texas, and has been served and answered herein.

2.04   Defendant, Vanderbilt Mortgage and Finance, Inc., is a foreign corporation, incorporated in the state of Tennessee, doing business, engaging in business and transacting business in the state of Texas, and has been served and answered herein.

2.05   Defendant, Kevin T. Clayton, is a non-resident, individual, doing business, engaging in business and transacting business throughout the State of Texas, and who has been granted, sold, and conveyed property situated in virtually every county in the State of Texas and has been served and answered herein.

2.06   Defendant, John Wells, is an individual and a citizen and resident of Nueces County, Texas, and may be served with process at 7002 Adcote Dr., Corpus Christi, Texas 78413.

2.07   Defendant, Benjamin Joseph Frazier, is an individual and a citizen and resident of Nueces County, Texas, and has been served and answered herein.

## III.
## JURISDICTION AND VENUE

3.01    This Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1332(a)(1) because the Intervenor and the Defendants are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and cost.

3.02    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the property at issue is situated within this District and Defendants' conduct occurred within this District.

## IV.
## STANDING

4.01    Intervenor has standing to bring this suit pursuant to Section 12.003 (a)(8) Texas Civil Practice and Remedies Code in that the Intervenor owns an interest in real property that was fraudulently conveyed by Defendants, which resulted in fraudulent liens against the Intervenor's real property.

## V.
## FACTS

5.01    On or about January 7, 2002, Defendants forged the signature of Maria M. Trevino to a Deed of Trust and to a Builder's & Mechanic's Lien Contract that fraudulently conveyed ownership and/or interest in land situated in Jim Wells County, Texas to Defendants which the Defendants then mailed to the Jim Wells County Clerk's Office of Jim Wells County, Texas for filing with the specific intent that the forged documents filed represented a valid lien, interest, or ownership in the property by the Defendants and with specific instructions to the Jim Wells County Clerk to return the forged documents back to Clayton Homes by mailing the same back to Clayton Homes address of 1610 N. Padre Island Dr. Corpus Christi, Texas 78408.

5.02  Intervenor would show the Court that the wrongfully recorded documents related to the transfer of land, named the CEO and President of Clayton Homes, Kevin T. Clayton as the Trustee.  As President and CEO of both Clayton Homes, Inc. and CMH Homes, Inc., Kevin T. Clayton had the ultimate authority over the business enterprise known as Clayton Homes.  Through this unfettered power, Kevin T. Clayton not only authorized but also encouraged the sale of manufactured homes at any cost to insure a profit.  In addition, Kevin T. Clayton through his unfettered power, instructed his employees to name himself, individually, as the trustee in all Deeds of Trust filed in the State of Texas in an effort not only to maximize his own wealth to the expense of the people in Texas, but to maximize profit to the company by fraudulently taking collateral through forgery in an effort to finance and sell a manufactured home.  Through the fraudulent conduct of the Defendants, including Kevin T. Clayton, Kevin T. Clayton was named as the Trustee in the forged documents described herein.

5.03  Intervenor would further show the Court that the Clayton Homes Defendants and Kevin T. Clayton created a scheme to sell mobile homes via a "land in lieu transaction", wherein they would use the land owned by someone other than the individual purchasing the manufactured home in question.  In many instances their scheme in this "land in lieu transactions" would result in the Clayton Homes Defendants forging warranty deeds, quitclaim deeds and affidavits of heirship in order to satisfy themselves that ownership of land was in the name of the landowner whose signature had been forged in a deed of trust and mechanic lien contract.  And in some instances even forging the names of landowners who were dead.

5.04  Knowing that their sales employees would have a difficult time in getting individuals who do not benefit in any way in someone else purchasing a manufactured

home to sign away the rights to their family farms and ranches, these Defendants inserted a notary verification that did not require the individual who purportedly signed the documents related to land to appear before a Notary Public to sign the documents. Instead, Clayton Homes included a Notary Public block that purposely allowed their sales employees to notarize documents when the signatory did not sign said documents in their presence. Clayton Homes knew that if their sales employees were required to actually witness the land owner who benefits in no way from the land in lieu transaction signing the documents, that their land in lieu scheme of selling manufactured homes would fail. In furtherance of this scheme, Clayton Homes actually paid its employees to become notaries to carry out their employment duties with Clayton Homes. Yet, Clayton Homes failed to provide any training to its employees regarding the notarization of documents, failed to provide any guidelines regarding the notarization of documents, failed to have any unwritten policies and procedures concerning the notarization of documents, failed to have any written policies and procedures in place regarding the notarization of documents, and encouraged and authorized its employees to notarize documents in which such employees had a financial interest.

5.05 Intervenor would further show the Court that the Defendants, Clayton Homes, Inc., CMH Homes, Inc., and Vanderbilt Mortgage operate as a single business enterprise of producing, selling, marketing, financing, and insuring manufactured homes. As a single business enterprise, each of these companies has integrated resources and operations to achieve a common business purpose. As a single business enterprise, each company shares common officers, common name, centralized management, shared accounting, common offices, common employees, and shared

allocation of profits and losses between each enterprise. As a single business enterprise, these companies have participated, approved, authorized, ratified, and encouraged the conduct complained of herein.

5.06  Intervenor would further show that at the time of the commission of the fraud complained of in this lawsuit, John Wells was the store manager for the Corpus store where these unlawful acts and fraud was occurring. John Wells was not only the manager of the Corpus store but was a business partner of the Defendants, Clayton Homes, Inc., CMH Homes, Inc., by virtue of a written partnership agreement. Pursuant to this written partnership agreement, John Wells and the Clayton Homes Defendants, engaged in the business of marketing and retailing of manufactured homes throughout South Texas. As partners, each partner is liable for the acts of its partners. As a partner of the Clayton Homes Defendants and store manager for the Corpus store, John Wells admittedly had the authority to employ, direct, and discharge employees of Clayton Homes and make business decisions for the benefits of the rest of his partners and the Clayton Homes Defendants confided in their partner, John Wells the management of the Corpus store.

5.07  Further, one of the Defendants herein, Benjamin Joseph Frazier has admitted to forging of signatures on many Deeds of Trust as well as Mechanic Lien Contracts which were then subsequently filed with a government agency of the State of Texas as well as with County Clerks throughout the South Texas area, including the County of Jim Wells here in Texas. At the time of the admitted acts he was not a Notary Public. At the time of the occurrence made the basis of this suit however, Benjamin Joseph Frazier had been commissioned as a Notary Public for the State of Texas. Even after Benjamin Joseph Frazier became commissioned to act as Notary Public he

continued to forge the names of persons to Deeds of Trust as well as Mechanic Lien Contracts. Benjamin Joseph Frazier has admitted under oath to having committed fraud and forgery with full authority, full knowledge, and full permission of a Clayton Homes, partner and store manager, John Wells.

5.08 Further, Intervenor would show the Court that John Wells, as a partner with Clayton Homes, approved and authorized the signing of notary signatures to documents such as the documents made the basis of this suit. As a partner, Clayton Homes is liable for forgery and civil conspiracy to commit forgery by and through the acts of its partner, John Wells.

5.09 Beginning in the 2003 and concluding in 2005, VMF, CHI, and CMH, were sued multiple times for forgery and notary fraud. Evidence in this litigation revealed that the Defendants participated in a scheme by which their sales associates were forging signatures and committing notary fraud on thousands of transactions. In fact, Defendants not only forged the signature of Intervenor to both the Deed of Trust and Mechanics Lien Contract that are involved in this case but committed notary fraud in fraudulently "notarizing" these documents.

5.10 In other cases, the Defendants learned that dead people's signatures were forged and determined that their employees were somehow notarizing dead people signing documents. When the evidence mounted against them that this fraud and forgery was widespread, the Defendants entered into confidential settlements with hundreds of people. At the time of these settlements, the Defendants recognized that there were thousands of more victims of this fraud and forgery. Rather than notifying their customers that they had been victims of this fraud and forgery, these Defendants

created a scheme in which thousands of Releases were filed in more than a dozen counties in Texas releasing the debt as being "paid in full." In furtherance of this scheme, the Defendants intentionally withheld and intentionally failed to disclose to these victims of fraud and forgery the fact that they had released the debt as "paid in full."

5.11  Intervenor would show the court that these Defendants filed massive amounts of Releases, all of which state that the installment contract is "paid in full" and none of which were provided to the victims of this fraud and forgery in Aransas County, Atascosa County, Bee County, Bell County, Brooks County, Brown County, Calhoun County, Cameron County, Dimmit County, Duval County, Ector County, Goliad County, Gonzales County, Jackson County, Jim Hogg County, Jim Wells County, Karnes County, Kerr County, Kleberg County, Live Oak County, Nueces County, Refugio County, San Patricio County, Victoria County, and Wharton County.

5.12  In addition to filing these mass secret releases indicating the debt was paid in full, incredibly, these Defendants continued to collect payments for the debt that is no longer due. In an effort to cover up the known fraud and forgery and in an effort to continue to collect millions in mortgage payments, the filing of these releases was done in secret in an attempt to conceal their criminal and fraudulent enterprise. The filing of these secret mass releases was done through a criminal and fraudulent enterprise created to cover up fraud and to alter government documents that were filed in numerous counties in Texas. Incredibly, these Defendants continue to this day to conceal this organized criminal activity in claiming that they do not have one single memorandum, letter, note or document of any kind that describes why they filed thousands of releases indicating the debt was paid in full and did not disclose such

filing to the customer or land owner. Instead, these Defendants contend by way of a declaration of Tom Hodges that this organized criminal activity was controlled and directed by its General Counsel, Tom Hodges. In fact, according to the declaration, Mr. Hodges provided all of the Clayton companies with advice on carrying out this criminal enterprise.

5.13 Even more egregious is the fact that these loans were packaged up and sold to Fannie Mae for hundreds of millions of dollars without disclosing the fraud and forgery involved in the transactions and, without ever disclosing that the collateral used to secure the loans had been released. Interestingly, Berkshire Hathaway, the parent company of the Defendants, owned a percentage of Fannie Mae when they purchased these fraudulent loans from Defendants. As the parent company, Berkshire Hathaway knew or should have known that Fannie Mae paid hundreds of millions of dollars for worthless unsecured loans. Berkshire Hathaway, however, sold its interest in Fannie Mae before the demise of Fannie Mae. Intervenor contends that Berkshire Hathaway knew the loans sold by Defendants and owned by Fannie Mae were based on fraudulent transactions and, knew the loans were no longer secured by real property. Berkshire Hathaway failed to disclose this knowledge to Fannie Mae when it chose to cash out of Fannie Mae for an enormous profit.

5.14 In sum, Intervenor is just one of thousands of people who fell prey to the organized and illegal enterprise created by these Defendants at the direction of their General Counsel to commit fraud, cover up fraud, and then commit fraud again.

# VI.
# FRAUDULENT DOCUMENTS RELATED TO LAND

6.01 Specifically, as described above, Intervenor alleges that Defendants filed in Jim Wells County, Texas fraudulent court documents, a fraudulent lien, and/or a fraudulent claim against real property situated in Jim Wells County, Texas with the intent that the document or other record fraudulently signed evidences a valid lien or claim against real property by Defendants with the intent to cause Intervenor to suffer physical injury, financial injury, mental anguish, and emotional distress. Intervenor seeks $10,000.00 or actual damages if greater for each such violation and all costs, fees, exemplary and punitive damages.

# VII.
# CIVIL CONSPIRACY

7.01 Intervenor would further show the Court that the conduct of Kevin T. Clayton, Clayton Homes, Inc., CMH Homes, Inc., Vanderbilt Mortgage & Finance, Inc., their partner and vice-principle, John Wells constitutes civil conspiracy. Intervenor alleges that these Defendants were fully aware, approved and authorized notary fraud and forgery within the business model of Clayton Homes in an effort to sell a manufactured home at any cost. Specifically, these Defendants were fully aware of the conduct complained of in this suit was occurring and failed to take any action to stop the notary fraud and forgery from occurring. In fact, it was not until they were caught and sued in those other lawsuits that they made a decision to continue with their fraud by secretly mass-filing deed of trust releases and mechanic lien contract releases and not telling either the landowner or the mobile home purchaser that releases concerning land and debt had occurred. Instead, to this day these same defendants continue to benefit from the fruits of their illegal and fraudulent activity by continuing to collect mortgage

payments on all of these released mortgage and/or contracts. The extent of such civil conspiracy is demonstrated by similar acts of notary fraud occurring in virtually every state in which Clayton Homes does business. Specifically, the Defendants allowed employees who retained a financial interest in the transaction to notarize documents. Such conduct is unlawful in the State of Texas. Defendants knew that a non-notary public was purportedly acknowledging documents as a notary public. Such conduct is unlawful in the State of Texas. Defendants knew that forged documents were being mailed to different government offices, both state and local for filing with these state and local government offices. Defendants knew that the individuals responsible for the mailing of these fraudulent documents for filing with local and state governmental agencies were employees of the Defendants. And these Defendants knew that these employees were acting as notary publics, having actually paid these individuals to become notary publics, allowing them to notarize documents without maintaining a notary log as required by law. Such conduct is unlawful. As such, Defendants are liable for civil conspiracy.

7.02 Specifically, as described above, Intervenor alleges that Defendants filed in Jim Wells County, Texas fraudulent court documents, a fraudulent lien, and/or a fraudulent claim against real property situated in Jim Wells County, Texas with the intent that the document or other record fraudulently signed evidences a valid lien or claim against real property by Defendants with the intent to cause Intervenor to suffer physical injury, financial injury, mental anguish, and emotional distress.

## VIII.
## FRAUD

8.01   Intervenor would further show the Court that the conduct of Kevin T. Clayton, Clayton Homes, Inc., CMH Homes, Inc. and Vanderbilt Mortgage and Finance, Inc., amounts to fraud. Each of the above Defendants actively participated in the conduct described herein.

8.02   Specifically, Intervenor would show the Court that the fraudulent record related to the transfer of land, named Kevin T. Clayton as the Trustee. Intervenor would show the Court that as President and CEO of both Clayton Homes, Inc. and CMH Homes, Inc., Kevin T. Clayton had the ultimate authority over the single business enterprise known as Clayton Homes. Through this unfettered power, Kevin T. Clayton not only authorized but encouraged the sale of manufactured homes at any cost to insure a profit. In addition, Kevin T. Clayton through his unfettered power, instructed his employees to name himself, individually, as the Trustee in all Deeds of Trust filed in the state of Texas in an effort not only to maximize his own wealth to the expense of the people in Texas, but to maximize profit to the company by fraudulently taking collateral through forgery in an effort to finance and sell a manufactured home. Through the fraudulent conduct of the Defendants, including Kevin T. Clayton, Kevin T. Clayton was named as the Trustee in the forged documents described herein.

8.03   Intervenor would further show the Court that the Clayton Homes Defendants and Kevin T. Clayton created a scheme to defraud the American public by selling homes via a land in lieu transaction wherein they would use the land owned by someone other than the individual purchasing the manufactured home in question. No other manufactured home company in the United States uses this fraudulent scheme to

sell homes. The only way the Clayton Home Defendants are able to use their scheme to sell manufactured homes is because they own the financing company, Defendant, Vanderbilt Mortgage.

8.04   Knowing that their sales employees would have a difficult time in getting individuals who do not benefit in any way in someone else purchasing a manufactured home to sign away the rights to their family farms and ranches, these Defendants inserted a notary verification that did not require the individual who purportedly signed the documents related to land to appear before a Notary Public to sign the documents. Instead, Clayton Homes included a Notary Public block that purposely allowed their sales employees to notarize documents when the signatory did not sign said documents in their presence. Clayton Homes knew that if their sales employees were required to actually witness the land owner who benefits in no way from the land in lieu transaction signing the documents, that their land in lieu scheme of selling manufactured homes would fail. In furtherance of this scheme, Clayton Homes actually paid its employees to become notaries to carry out their employment duties with Clayton Homes. Yet, Clayton Homes failed to provide any training to its employees regarding the notarization of documents, failed to provide any guidelines regarding the notarization of documents, failed to have any unwritten policies or procedures concerning the notarization of documents, failed to have any written policies and procedures in place regarding the notarization of document, and encouraged and authorized its employees to notarize documents in which such employee had a financial interest.

## IX.
## R.I.C.O.

9.01    Intervenor restates and re-alleges the above paragraphs as if fully set forth herein.

9.02    Intervenor is a "person" within the meaning of 18 U.S.C. sections 1961(3) and 1964(c).

9.03    Defendants Kevin T. Clayton, Clayton Homes, Inc., CMH Homes, Inc. and Vanderbilt Mortgage & Finance Inc., constitute an enterprise for purposes of 18 U.S.C. sec. 1961(4).

9.04    Alternately, Defendants with their members formed an association-in-fact for the purpose of depriving Intervenor of his property. This association is an "enterprise" within the meaning of 18 U.S.C. sec. 1962(c).

9.05    This enterprise was engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. sec. 1962(c).

9.06    Defendants, including persons employed by or associated with the enterprise, specifically the Defendants and its members, conducted or participated, directly or indirectly, in the operation and/or management of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. sec. 1961(5) and 1962(c).

9.07    Defendants along with the enterprise, engaged in "racketeering activity" within the meaning of 18 U.S.C. § 1961(1) by engaging in the acts set forth above. The acts set forth above constitute violations of 18 U.S.C. sections 1028, 1341, 1343, 1344, 1543, and 1956 as set forth more fully in paragraph V of this Intervention. Defendants each committed and/or aided or abetted the commission of two or more of these acts of racketeering activity within the last ten (10) years.

9.08 Defendants or their agents have caused or conspired to cause the transmission of "forged" documents through the mail and/or by wire via facsimile. Such actions constituted:

    a.    A scheme to defraud conducted through the mails and/or over wire transmissions;

    b.    With the intent to defraud the Intervenor landowner, the mobile home purchasers and the local and state government offices where these "forged" documents were ultimately filed; and

    c.    Defendants did in fact mail and/or transmit by wire materials in furtherance of this scheme.

9.09 Defendants or its agents have caused or conspired to cause the transmission of Deed of Trust Releases and Mechanic's Lien Releases through the mail and/or by wire via facsimile that failed to disclose to Intervenor that a mortgage obligation had been released. Such actions constituted:

    a.    A scheme to defraud conducted through the mails and/or over wire transmissions;

    b.    With the intent to defraud the purchaser, Intervenor; and

    c.    Defendant did in fact mail and/or transmit by wire materials in furtherance of this scheme.

9.10 Defendants or their agents have engaged or conspired to engage in money laundering by investing the proceeds of these activities into the enterprise such that:

    a.    Defendants, knowing that the money involved in these financial transactions represented the proceeds of some form of unlawful activity, conducted or attempted to conduct financial transactions involving the proceeds from the unlawful activities of the Defendants by paying many of the co-conspirators huge bonuses and investing the rest of the proceeds of these unlawful activity in their enterprise;

    b.    With the intent to promote the carrying out of these unlawful activities.

9.11   The acts of racketeering activity referred to in paragraph V of this Petition constitute a pattern of racketeering within the meaning of 18 U.S.C. sec 1961(5). The acts were related to each other by virtue of common participants, a common class of victims, a common method of commission, and the common purpose and common result of depriving the Intervenor of her property and enriching the Defendants. The Defendants' scheme commenced as early as January of 1999.

9.12   The Intervenor was injured in her property as a result of these RICO violations.

9.13   As a result of their misconduct, Defendants are liable to Intervenor for her losses in an amount to be determined at trial.

9.14   Pursuant to 18 U.S.C. § 1964(c), Intervenor is entitled to recover threefold the damages sustained, plus costs including attorney's fees, from the Defendants.

9.15   Intervenor would show the Court and jury that the criminal enterprise was created, controlled and directed by Tom Hodges, General Counsel of the Clayton Homes companies. According to documents filed, every decision related to the filing of these mass secret releases were done under the direction and control of Tom Hodges. Intervenor would submit that it's the very advice, instruction, and guidance that the Clayton companies are claiming to be privileged that constitute R.I.C.O. activity.

9.16   Intervenor would further show that these Defendants through a criminal enterprise, packaged up and sold these sub-prime notes to Fannie Mae and, in doing so, failed to disclose and intentionally withheld information known to them of the forgeries and fraud contained in the transactions, and knowingly failed to disclose to Fannie Mae that they had filed these mass releases that pertain to the notes that Fannie Mae purchased. Such conduct was committed intentionally to deceive Fannie Mae and constitutes a criminal activity for which Intervenor now sues.

# X.
# DAMAGES

10.01 Maria M. Trevino seeks as damages all damages to which she is legally entitled to pursuant to Section 12.002 (b) Texas Civil Practice and Remedies Code, including the greater of $10,000.00 or actual damages caused by each violation and court costs, to include all related expenses of bringing this action, including investigative expenses, attorney's fees and exemplary damages that the court believes would be justified as punishment for the crimes and fraudulent conduct of the Defendants and would serve as an example to others contemplating on engaging in the same or similar criminal and/or fraudulent conduct.

10.02 Maria M. Trevino further specifically pleads that the limitation on amount of recovery of punitive damages as set out by Section 41.008 of the Texas Civil Practice & Remedies Code does not apply to the cause of action pled by Intervenor in that forgery is specifically exempted from any limitation on recovery of punitive damages.

# XI.
# PRE-JUDGMENT AND POST-JUDGMENT INTEREST

11.01 Intervenor seeks pre-judgment and post-judgment interest as allowed by law.

# XII.
# JURY DEMAND

12.01 Intervenor requests a trial by jury for all issues of fact. A jury fee has been paid timely and properly.

# PRAYER

WHEREFORE, PREMISES CONSIDERED, Intervenor prays that Defendants be cited to appear and answer herein, that this cause be set down for trial before a jury, and that Intervenor recover judgment of and from the Defendants for her actual

damages in such amount as the evidence may show and the jury may determine to be proper, together with pre-judgment interest, post-judgment interest, costs of suit, and such other and further relief to which they may show herself to be justly entitled.

Respectfully submitted,

s/ David L. Rumley
David L. Rumley
ATTORNEY-IN-CHARGE
State Bar No. 00791581
Federal I.D. No. 18120
Jeffrey G. Wigington
State Bar No. 00785246
Federal I.D. No. 16462

**ATTORNEYS FOR INTERVENOR
MARIA M. TREVINO**

OF COUNSEL:

WIGINGTON RUMLEY DUNN, LLP
800 N. Shoreline
14th Floor, South Tower
Corpus Christi, Texas 78401
Telephone: (361) 885-7500
Facsimile: (361) 885-0487

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record via ECF on this the 12th day of February, 2010.

Mr. Baldemar Gutierrez
Mr. J. Javier Gutierrez
THE GUTIERREZ LAW FIRM, INC.
700 East 3rd Street
Alice, TX 78332

Ms. Cristina Rodriguez
Mr. Stephen G. Tipps
Ms. Jennifer A. Powis
BAKER BOTTS, L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002

Mr. Jorge C. Rangel
The Rangel Law Firm, P.C.
615 Upper N. Broadway, Suite 2020
Corpus Christi, Texas 78477

Mr. Carlos R. Soltero
McGinnis, Lochridge & Kilgore, L.L.P.
600 Congress Avenue, Suite 2100
Austin, Texas 78701

                                                s/David L. Rumley
                                                David L. Rumley