UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| VANDERBILT MORTGAGE AND | § | |
| FINANCE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-09-312 |
| | § | |
| CESAR FLORES, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day came on to be considered Defendant Kevin T. Clayton's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and Section 51.007(c) of the Texas Property Code (D.E. 130.)  For the reasons stated herein, the Court finds that Section 51.007 does not require dismissal of Kevin Clayton from this action.  The Defendant's Motion to Dismiss is DENIED.

## I.    JURISDICTION

Pursuant to 28 U.S.C. § 1331, the Court has federal question subject matter jurisdiction over this action because Intervenors Maria and Arturo Trevino bring various claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

## II.    BACKGROUND

On August 4, 2009, Vanderbilt Mortgage and Finance, Inc. brought suit in state court against Cesar Flores and Alvin King, seeking to repossess and foreclose a mobile home they purchased from CMH Homes under a retail installment contract signed January 5, 2002.  (D.E. 1, Exhibit B; D.E. 98, p. 2.)  On September 18, 2009, Flores and King counter-sued. (D.E. 1, Exhibit B.)  On October 26, 2009, Maria Trevino intervened in the state court action against Vanderbilt and joined Clayton Homes, Inc., CMH Homes, Inc., and Kevin T. Clayton.  (D.E. 1,

Exhibit B.)  Trevino alleged, among other things, that the Intervention-Defendants had created fraudulent documents related to land, engaged in fraud and civil conspiracy, and had violated various subsections of RICO.  (D.E. 98, p. 19-33.)  Following Trevino's intervention, Intervention-Defendant CMH Homes removed the entire action to this Court based on federal question jurisdiction under RICO and 28 U.S.C. § 1331.  (D.E. 1.)  Maria Trevino's husband, Arturo Trevino, intervened in the action on February 12, 2010.  (D.E. 39.)

On May 20, 2010, the Intervenors filed with this Court a Second Amended Intervenor Complaint.  (D.E. 98.)  In his Answer to this Amended Complaint, Intervention-Defendant Kevin Clayton included a "Verified Denial."  (D.E. 130, p. 2.; D.E. 105, p. 9, ¶ 85.)  The "Verified Denial" states:

> "Defendant asserts his reasonable belief that he was named as a party to this lawsuit solely in his capacity as a Trustee under the Deed of Trust and Mechanic's Lien Contract filed on Intervenor's property as evidenced by Intervenor's reliance on this fact throughout his intervention.  Therefore, he is not a necessary party to this lawsuit and should be dismissed pursuant to Section 51.007 of the Texas Property Code."

(D.E. 130, p. 2.; D.E. 105, ¶ 85.)  Clayton attached a sworn affidavit to his Answer, stating that he "had read the Verified Denial contained in paragraph 85 of the Answer filed on his behalf and that each and every statement contained in paragraph 85 of the Answer is within his personal knowledge and is true and correct."  (D.E. 105, p. 1-2.)  The Intervenors did not respond to his Verified Denial within 30 days.

On July 23, 2010, Clayton filed a Motion to Dismiss Pursuant to Texas Property Code Section 51.007 (the "Motion to Dismiss").  (D.E. 130.)  Clayton contends that because he properly filed a "verified denial" pursuant to Section 51.007(a), and the Intervenors failed to file a response rebutting these allegations within thirty days as required by Section 51.007(b), Section 51.007(c) mandates that the Court dismiss him from this lawsuit.  (D.E. 130, p.3.)

In their Response to Clayton's Motion to Dismiss, the Intervenors argue that Section 51.007 does not mandate dismissal based on four grounds.  (D.E. 141).  First, they contend that Section 51.007 does not apply because the Intervention is not a foreclosure action.  Second, it does not apply because Clayton was not sued "solely" in his capacity as trustee under a deed of trust or other document in a foreclosure suit.  (D.E. 141, p. 3.)  Third, Clayton was not a "trustee" in this matter because "the deed of trust and mechanic's lien contract naming Kevin Clayton as a trustee were forged and fraudulent documents."  (D.E. 141, p. 6.)  Fourth, in the alternative, they contend that even if Section 51.007 does apply to this matter, Clayton has not met the procedural requirements of the statute because he failed to state the "basis" for his reasonable belief he was named as a party solely in the capacity of trustee under a deed of trust.  (D.E. 141, p. 3.)

To the extent that the Intervenors attempt in their Response to rebut Clayton's Verified Denial asserting his reasonable belief that he was named solely in his capacity as trustee, Section 51.007 would mandate that they do so in a verified response, filed within 30 days of receiving Clayton's Verified Denial.  See § 51.007(b).  However, their failure to comply with this procedural requirement is not fatal.  For the reasons explained below, the Court finds that Section 51.007 does not apply to this proceeding and does not mandate dismissal of Clayton from this action.

## III.    DISCUSSION

### A.    Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted."  FED. R. CIV. P. 12(b)(6).  A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974

(2007).  See also Sonnier v. State Farm Mut. Auto. Ins. Co., No. 07-30098, 2007 WL 4260892, at *1 (5th Cir. Dec. 6, 2007); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  "[A] plaintiff is obligated to provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  Bradley v. Phillips Petroleum Co., No. H-05-3912, 2007 WL 4443876, at *2 (S.D. Tex. Dec. 18, 2007) (quoting Twombly, 127 S. Ct. at 1964–65).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Twombly, 127 S. Ct. at 1964–65).  "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  Cuvillier, 503 F.3d at 401 (quoting Twombly, 127 S. Ct. at 1966) (quotations omitted).  Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.  See Twombly, 127 S. Ct. at 1967-70.

### B.    Texas Property Code § 51.007

Texas Property Code Section 51.007(a) provides that  "[t]he trustee named in a suit or proceeding may plead in the answer that the trustee is not a necessary party by a verified denial stating the basis for the trustee's reasonable belief that the trustee was named as a party solely in the capacity as a trustee under a deed of trust, contract lien, or security instrument."  See Tex. Prop. Code § 51.007(a).  Once a verified denial has been filed, Section 51.007(b) provides that

"[w]ithin 30 days after the filing of the trustee's verified denial, a verified response is due from all parties to the suit or proceeding setting forth all matters, whether in law or fact, that rebut the trustee's verified denial."  See § 51.007(b).  Should a party fail to make the verified response or objection within the 30-day time frame, then, according to Section 51.007(c), the trustee "shall be dismissed from the suit or proceeding without prejudice."  See § 51.007(c).  If, on the other hand, the plaintiff does file a timely verified response, the court will hold a hearing on the matter and will dismiss the trustee "if the court determines that the trustee is not a necessary party."  § 51.007(d).

Section 51.007 "does not mandate dismissal of all claims against a trustee, but rather provides that a trustee may be dismissed under certain circumstances."  Johnson v. Ocwen Loan Servicing, LLC, No. C-09-47, 2009 WL 2215103 at *3 (S.D. Tex. July 22, 2009) (emphasis added).  Section 51.007 merely sets forth a procedure by which a trustee may have the suit against him dismissed.  Id.   See also Rodriguez v. Ocwen Loan Servicing, LLC, 2008 U.S. Dist. LEXIS 576, * 12 (S.D. Tex. Jan. 4, 2008).  Nonetheless, in cases where a trustee named on a deed of trust or other security instrument followed the procedures outlined in Section 51.007, and the other party failed to file a timely verified response, federal district courts in Texas have followed the mandate of Section 51.007(c) and dismissed trustees from the proceeding without prejudice.[1]  See WAMCO XXVIII, Ltd. v. Casa Grande Cotton Fin. Co., 314 F. Supp. 2d 655

---

[1] Texas district courts have not treated Section 51.007 as a state procedural rule that does not apply in federal courts. See Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Hanna v. Plumer, 380 U.S. 460, 465 (U.S. 1965) ("[Federal courts sitting in diversity cases] are to apply state substantive law and federal procedural law.")  The California Civil Code provides an analogous procedural mechanism by which trustees may be dismissed from actions in which they have been named solely in their capacities as trustees on deeds of trust.   See Cal. Civ. Code § 2924(l) (providing procedure by which trustee under deed of trust in action in which that deed of trust is the subject may file a "declaration of nonmonetary status" and by which he may be dismissed from the suit in the event no objection is filed within 15 days).  However, unlike district courts in Texas, California district courts have held that "California Civil Code § 2924l is a state procedural rule, and not state substantive law.  Accordingly, nonmonetary status may not be granted in federal court."  Tran v. Wash. Mut. Bank, 2010 U.S. Dist. LEXIS 20136 (E.D. Cal. Feb. 11, 2010) (citing Erie, 304 U.S. 64 (1938)).

(N.D. Tex. 2004) (in foreclosure action removed to federal court, district court dismissed

substitute trustee due to plaintiff's failure to respond to verified denial within 30 days, pursuant

to 51.007(c)); Cooper v. Barrett Burke Wilson Castle Daffin & Frappier, L.L.P., 2008 U.S. Dist.

LEXIS 33804, at *9-11 (N.D. Tex. Apr. 22 2008) (in foreclosure action removed to federal

court, district court granted summary judgment in favor of trustees named on deed of trust due to

plaintiff's failure to respond to trustees' verified denial, pursuant to §51.007(c)); White v. Wells

Fargo Bank NA, No. 3:09-CV-1266-B, 2010 U.S. Dist. LEXIS 71823, at *5 (N.D. Tex. July 14,

2010)  (in foreclosure action removed to federal court, district court dismissed trustees named on

deed of trust from action due to plaintiff's failure to respond to trustees' verified denial, pursuant

to § 51.007(c)).

### C.      § 51.007 Does Not Apply to the Intervention Lawsuit

Because the Intervenors failed to respond to his Verified Denial within 30 days, Clayton

requests that the Court dismiss him pursuant to the procedure outlined in Tex. Prop. Code §

51.007.  The Intervenors argue in response that the protections afforded by Section 51.007 do not

apply to Clayton in this case because the Intervenors' lawsuit against Clayton is not part of a

foreclosure proceeding.  Intervention-Defendant Vanderbilt Mortgage and Finance, Inc. filed a

foreclosure action against Flores and King to collect on payments due on their mobile home.

However, "[n]ot only were the Intervenors not a party to this the foreclosure proceeding, but

Clayton has admitted that the foreclosure proceeding filed by [Vanderbilt] did not relate to or

involve the property owned by the Intervenors or the documents related to land." (D.E. 141, p.

4.)   The Intervenors then go on to argue that Section 51.007 applies only to foreclosure

proceedings.  (D.E. 141, p. 4.)  They cite to the statute itself and the legislative history.  (D.E.

141, p. 4) (citing See 3Acts 1999, 76th Leg., Ch. 1304).  They also note that every case that

Clayton cites in his Motion to Dismiss involves "allegations made against a trustee or substitute trustee in a foreclosure action."  (D.E. 141, p. 4)  (citing <u>WAMCO</u>, 314 F. Supp. 2d 655 (N.D. Tex. 2004);  <u>Johnson</u>, 2009 WL 2215103 at *3; <u>Rodriguez</u>, 2008 U.S. Dist. LEXIS 576, at * 12; <u>Morgan v. Chase Home Fin., LLC</u>, 306 F. App'x 49, 52 (5th Cir. 2008); <u>Beard v. Aurora Loan Servs., LLC</u>, 2006 WL 1350286 (S.D. Tex. May 17, 2006); <u>Cooper</u>, 2008 U.S. Dist. LEXIS 33804, at *9-11).

Clayton argues, in contrast, that Section 51.007 is not limited to foreclosure actions. Rather, "it may be invoked by a trustee "named in a suit or proceeding.""  (D.E. 150, Exhibit 1, p. 2) (citing §51.007(a)).  "There is no restriction on the type of suit or proceeding to which the statute applies.  The Trevinos cite no case or statutory provision limiting the applicability of Section 51.007 solely to foreclosure actions.  There are none."  (D.E. 150, Exhibit 1, p. 3.) Clayton also contends that "[w]hile the legislative history of Section 51.007 (the sole authority cited by the Trevinos in support of their argument) suggests that the bill was enacted to address certain concerns often arising in foreclosure actions, it contains no express words of limitation concerning the applicability of the statute."  (D.E. 150, Exhibit 1, p. 3.)

Clayton is correct that Section 51.007 contains no express words limiting application of the statute to foreclosure proceedings.  Section 51.007(a) states that a person named as a "trustee under a deed of trust, contract lien, or security instrument" who is named in "a suit or proceeding" may file a verified denial.  <u>See</u> Tex. Prop. Code § 51.007(a).  Nor is there case law expressly limiting the statute to foreclosure actions.  However, the text and legislative history of the statute indicate that Section 51.007 is intended to apply specifically to trustees sued in the context of foreclosure actions.  Section 51.007 was adopted by the Legislature of the State of Texas in 1999 in "an act relating to certain proceedings in a foreclosure action."  <u>See</u> 3 Acts

1999, 76th Leg., Ch. 1304, S.B. No. 1742.  Section 51.007 was one of a series of provisions concerning proper procedures to be followed during foreclosure actions.  See §51.0001-51.015. For example, Section § 51.003 provides the procedure for obtaining a deficiency judgment when real property sold at a foreclosure sale is worth less than the unpaid balance of the indebtedness secured by the property.  See § 51.003.  Section 51.009 provides the rule that a purchaser at a foreclosure sale acquires the foreclosed property "as is."  See § 51.009.  When the Legislature amended Section 51.007, the Legislature stated: "[t]he changes in law made by ch. 1304 apply only to foreclosure actions instituted on or after the effective date of this Act.  See 3 Acts 1999, 76th Leg., Ch. 1304, § 2(b) (emphasis added).  The text of Section 51.007 itself states that "[a] dismissal of the trustee pursuant to Subsections (c) and (d) shall not prejudice a party's right to seek injunctive relief to prevent the trustee from proceeding with a foreclosure sale."  § 51.007(f) (emphasis added).  This language clearly indicates that "the trustee" contemplated in Subsections (c) and (d) is the trustee named on a deed of trust or other security instruments pertaining to a pending foreclosure on a person's property.

Moreover, all the cases in which courts have applied Section 51.007 to dismiss defendants due to plaintiffs' failure to comply with Section 51.007(b) have involved trustees or substitute trustees named on security instruments in foreclosure actions.  See WAMCO., 314 F. Supp. 2d 655 (N.D. Tex. 2004) (dismissing substitute trustee in foreclosure action removed to federal court); Morgan, 306 F. App'x 49, 52 (5th Cir. 2008) (finding case was properly removed to federal court after the state court dismissed non-diverse trustee named on deed of trust from foreclosure proceeding because plaintiff failed to file verified response to verified denial, pursuant to § 51.007(c)); Cooper, 2008 U.S. Dist. LEXIS 33804, at *9-11 (in foreclosure action removed to federal court, district court granted summary judgment in favor of trustees on deed of

trust due to plaintiff's failure to respond to trustees' verified denial); <u>White</u>, 2010 U.S. Dist. LEXIS 71823, at *5 (dismissing trustees named on deed of trust in foreclosure action removed to federal court due to plaintiff's failure to respond to trustees' verified denial).

Thus, the text of the statute, the legislative history, and the case law all indicate that Texas Property Code § 51.007 was intended to apply only to trustees or substitute trustees named on deeds of trust or other security documents involved in a foreclosure proceeding.

In the present case, Kevin Clayton is named as trustee on the Deed of Trust and the Mechanic's and Builder's Lien Contract creating the liens on the Trevinos' property.  He is therefore a "trustee" for purposes of Section 51.007.[2]  However, the Trevinos' Intervention lawsuit is not a foreclosure action.  The Trevinos' property was never foreclosed upon.  Indeed, it is undisputed that the liens executed on their property were released in 2005.  (D.E. 98, p. 6-7.) The only relation between the Trevinos' action and the foreclosure suit brought by Counter-Plaintiffs, Flores and King, is that their property was used to secure the debt resulting in foreclosure on Flores and King's mobile home.  (D.E. 98, p. 2.)  Rather, the Intervenors have alleged various causes of action against Kevin Clayton, including creation of fraudulent documents related to land; fraud; civil conspiracy; and violations of RICO.  (D.E. 98, p. 19-33.) Thus, unlike in the other cases in which federal courts have applied Section 51.007 to dismiss trustees from foreclosure proceedings, this case does not involve a trustee on a deed of trust or other security document in a foreclosure action.  Section 51.007 does not apply to the Intervention.

---

[2] The Intervenors argue Clayton is not even a "trustee" under the statute because "the deed of trust and mechanic's lien contract naming Kevin Clayton as a trustee were forged and fraudulent documents."  (D.E. 141, p. 6.) However, as Clayton points out, the authenticity of these documents is "strongly contested."  (D.E. 150, p. 4.)  The Deed of Trust states that "Kevin T. Clayton" is "Trustee."   (D.E. 144, Exhibit 1, Vol. 774, P. 637.)  The Court does not have sufficient basis to find that Clayton was not the named "trustee" on these documents.

### C.        Clayton Was Not Sued Solely In His Capacity As Trustee

Because the Court finds that Section 51.007 does not apply to this lawsuit, the Court need not address the Intervenor's further arguments.  However, the Court notes that dismissal of Clayton from this lawsuit would also be inappropriate as a substantive matter.  Clayton is a "necessary party" to this action.  As is clear from the face of the pleadings, Clayton is not being sued in his capacity as the named trustee on the Deed of Trust and the Mechanic's Lien Contract. Rather, he is being sued primarily in his capacity as the President and CEO of CMH Homes and Clayton Homes, who allegedly had a hand in directing and authorizing the CMH Homes enterprise, including the "land-in-lieu" sales program that allegedly produced various forms of fraud by CMH employees.  (D.E. 141, p. 5.)  In the Second Amended Intervention Complaint, the Intervenors specifically allege that Clayton was personally involved in the allegedly fraudulent transactions creating the liens on their property.  They allege that, as President and CEO of both Clayton Homes and CMH Homes, Clayton had "ultimate authority" and "unfettered power" over these business enterprises.  They allege that he "not only authorized but also encouraged the sale of manufactured homes at any cost to insure a profit."  (D.E. 98, p. 8-9.) They allege that Clayton <u>named himself</u> as trustee on the lien documents in "land in lieu" transactions specifically in order to enhance profits to himself and to the company by creating the appearance that CMH customers' mobile home purchases were backed by Texas real estate, which made the resulting securitized mortgages easier to market to investors.  (D.E. 89, p. 9.) Based on these allegations, it is clear that Clayton is not named in this lawsuit "solely in his capacity as a trustee."[3]

---

[3] The Intervenors contend that Section 51.007(a) "requires" that Clayton be named "solely" in his capacity as trustee.  (D.E. 141, p. 4.)  This is not an entirely accurate characterization of the statute.  Section 51.007(a) does not "require" that a trustee be named solely in his capacity as trustee.  It merely sets forth a procedure under which a trustee may attempt to have the suit against him dismissed by objecting that he was named "solely in his capacity as

Nonetheless, Clayton continues to allege that he "reasonably believes he was named a defendant in this matter by Intervenors solely because he was named trustee in a deed of trust related to Intervenors' property." (D.E. 130, p. 2.) He contends that he has "no personal knowledge of any facts relevant to this litigation[,]" that he was not "personally involved in the creation, implementation or modification of any of the policies or procedures challenged by the Trevinos in this lawsuit[,]" and that his "*only* connection to this case is that his name appears on certain lien documents relating to property owned by the Trevinos." (D.E. 150, Exhibit 1, p. 3) (emphasis in original.)

Clayton's assertions of non-involvement are in conflict not only with the allegations made by the Intervenors respecting his conduct, but also with the evidence on record. The Intervenors' allegations that Clayton was personally involved in the running of CMH Homes – and that he may have had knowledge of fraudulent activities by CMH employees – are not unsupported by evidence. On May 25, 2004, following accusations in various lawsuits brought between 2003 and 2005, Clayton sent a company-wide voicemail to all CMH employees concerning the fraudulent notarizations allegedly occurring at the Corpus Christi store. (D.E. 141, p. 5.) The Intervenors have attached to their Response Clayton's deposition testimony, taken January 6, 2005, in which clips from the voicemail were played for Clayton. (D.E. 141, Exhibit A, p. 24-43.) Clayton admitted that he was the speaker. (D.E. 141, Exhibit A, p. 26.) Among other things, Clayton states in the voicemail:

"I want to apologize for the negative press in the paper today on Clayton Homes. It reflects poorly on all of us, and it reflect poorly on our systems and processes.

---

trustee," and under which the opposing parties in the proceeding may object that the trustee is in fact a necessary party. See Johnson, 2009 WL 2215103 at *3; Rodriguez, 2008 U.S. Dist. LEXIS 576, at * 12. To the extent that the Intervenors attempt in their Response to Clayton's Motion to rebut Clayton's assertion that he was named solely in his capacity as trustee, Section 51.007 would mandate that they do so in a verified response, filed within 30 days of receiving Clayton's Verified Denial. See § 51.007(b). However, for the reasons explained above, this Court finds that Section 51.007 does not apply to the Intervention lawsuit at all. Thus, the Intervenors' failure to follow this procedure is not fatal.

> Fortunately, this was isolated to one store, Corpus Christi, Texas.  And what we have there is a salesperson who was terminated roughly a year ago, and it had to do with notarizing documents, and, and we think that it's very limited to, to, you know, very few transactions."

(D.E.141, Exhibit A, p. 26.)  Clayton goes on to give company employees a reminder:

> "If you're notarizing a document, then that means that your using it, and the, and the person across from you is exactly who they are; you've checked their ID, and you know that…We're all out there doing transactions every day, and we have to represent the company 100 percent ethically.  There isn't tolerance for fraud in the company.  And I – and we see very little of that, and I'm so proud of that.  But, but any cases of it, it has to be reported, and there's zero tolerance for it because it it, it ruins the reputation and the livelihood of all 10,000 others of us.  So thanks for all you do, and, and, enforce that.  It means all of our futures."

(D.E. 144, Exhibit A, p. 39-40, 43.)

Although this voicemail is by no means an acknowledgment by Clayton that he was aware of the fraud allegedly occurring at the Corpus Christi store, it does support that Clayton was personally involved in the CMH business and even in the implementation of notarization policies and procedures.  Clearly, there remain substantial questions of fact as to the extent of Clayton's involvement in and knowledge of the activities allegedly occurring at the Corpus Christi store.  Based on the Intervenors' allegations and the evidence on record, dismissal at this stage under either Federal Rule of Civil Procedure 12(b)(6) or Rule 56 would be inappropriate.  Dismissal under Texas Property Code Section 51.007 is also inappropriate under these circumstances.  Clayton simply is not being sued solely in his capacity as trustee on the deed of trust in a foreclosure action.  He could not reasonably have believed this to be the case.

## IV.    CONCLUSION

For the reasons explained above, the Court finds Texas Property Code Section 51.007 does not apply to this action and that the Intervenors' failure to file a verified response to Clayton's Verified Denial does not mandate that Clayton be dismissed from the lawsuit.

Clayton's Motion to Dismiss Pursuant to Texas Real Property Code § 51.007 is DENIED. (D.E. 130.)

SIGNED and ORDERED this 8th day of September, 2010.

_____
Janis Graham Jack
United States District Judge