IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| VANDERBILT MORTGAGE AND | § | |
| FINANCE, INC., | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | 2:09cv00312 |
| CESAR FLORES, *et al,* | § | |
|     Defendants. | § | |

## VANDERBILT AND CMH'S MOTION FOR JUDGMENT AS A MATTER OF LAW, OR, IN THE ALTERNATIVE, FOR NEW TRIAL, OR, IN THE FURTHER ALTERNATIVE, FOR REMITTITUR WITH RESPECT TO THE CLAIMS OF THE TREVINOS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Pursuant to Federal Rule of Civil Procedure 50, Intervention Defendants Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") and CMH Homes, Inc. ("CMH") ("Defendants") respectfully renew their motion for judgment as a matter of law previously filed at the end of Intervenors Maria M. Trevino and Arturo Trevino's ("Intervenors" or "Trevinos") case (D.E. 226) and at the close of the evidence (D.E. 228), and seek entry of judgment in their favor on the Trevinos' claims, separately and severally. Alternatively, Defendants move this honorable Court for a new trial pursuant to Federal Rule of Civil Procedure 59(a). In the further alternative, Defendants move this Court for a remittitur of the Trevinos' statutory penalty award.

## INTRODUCTION

The Trevinos transferred the land at issue in July, 2003 and the Spring of 2005. The liens at issue were released by public filings on October 4, 2005. More than four years after the liens were released, Maria Trevino intervened in this civil action on October 26, 2009. (D.E. 1-2, p. 38). In February, 2010, Arturo Trevino intervened in this civil action. When they filed their

interventions, the Trevinos had not been obligated or indebted on the liens filed on their property for more than four years and had not owned the property for more than four years.

There are three primary reasons that this Court should grant the renewed motion for judgment as a matter of law by CMH and Vanderbilt as to the Trevinos' Chapter 12 claim.  First, the Trevinos do not have statutory standing to pursue their Chapter 12 claim, as the liens had been released more than four years before they intervened in this lawsuit and they were not obligated or indebted on the liens when they filed their claims.

Second, the Trevinos' Chapter 12 claim is barred by the statute of limitations.  The discovery rule does not apply because, *inter alia*, the Trevinos' "injury" is not "objectively verifiable."  *See* D.E. 182 at 13 & n.5.  This Court has explained that, "for the discovery rule to apply, the injury must be . . . objectively verifiable. . . . [A]n injury is objectively verifiable . . . if the presence of injury . . . cannot be disputed".  D.E. 182 at 13 & n.5 (citations and internal quotations omitted).  The Trevinos' alleged injury is certainly disputed and is not "objectively verifiable" because this Court found as a matter of law that the Trevinos did not suffer tangible financial loss or mental anguish damages (D.E. 182, pp. 41, 43) and the jury found that the Trevinos suffered no actual damages (D.E. 245, Question Nos. 19 and 23).  As a result, the discovery rule does not apply, the "legal injury rule" does apply, and the Trevinos' Chapter 12 claim is barred by the applicable four-year statute of limitations.  *See* D.E. 182 at 12-13.

Third, Vanderbilt should be granted judgment as a matter of law because the Trevinos failed to submit any evidence, much less a preponderance of the evidence, that Vanderbilt was involved in the filing of the liens at issue in this case.

For these three reasons and other reasons discussed in this Motion, CMH and Vanderbilt respectfully ask this Court to grant their renewed motion for judgment as a matter of law.

2

## MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants allege and incorporate herein all grounds contained in Defendants' motion for judgment as a matter of law at the end of the Trevinos' case, which was made again at the close of all the evidence.  (D.E. 226; D.E. 228).  Defendants further adopt and incorporate by reference all defenses raised in their Answers to the Trevinos' Second Amended Intervention and all defenses or objections raised in their Motion in Limine and at trial.  (D.E. 102; D.E. 103; D.E. 186).  Without waiving any of those grounds, Defendants move the Court to enter judgment as a matter of law in their favor on the following grounds, separately and severally:

## A.    The Trevinos Lack Statutory Standing

1.    As a matter of law, the Trevinos lacked statutory standing to pursue a claim under Chapter 12 of the Texas Civil Practice and Remedies Code ("Chapter 12") for the filing of a fraudulent lien.  The standing provision of Chapter 12 provides:

> (a) The following persons may bring an action to enjoin violation of this chapter or to recover damages under this chapter: . . . (8) in the case of a fraudulent lien or claim against real or personal property or an interest in real or personal property, the obligor or debtor, or a person who owns an interest in the real or personal property.

Tex. Civ. Prac. & Rem. Code Ann. § 12.003(a)(8).  Statutory standing is determined "at the time a suit is filed."  *Bowers v. Matula*, 943 S.W.2d 536, 539 (Tex.App. – Houston [1st Dist] 1997, no writ) (citing *Tex. Ass'n of Business v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)); *Pluet v. Frasier*, 355 F.3d 381, 385-86 (5th Cir. 2004).  "In identifying an injury that confers standing, courts look exclusively to the time of filing."  *Loa-Herrera v. Trominski*, 231 F.3d 984, 987 (5th Cir. 2000).

It is undisputed that *at the time they intervened in this civil action*, the Trevinos were not obligors or debtors on the underlying debt, and did not own an interest in the subject property.

*See* D.E. 98 ¶ 8 (the liens at issue were released in October 2005); D.E. 182, p. 8 ("Intervenors concede that they no longer owned the property at issue at the time they filed suit"); Trial Tr. pp. 321:13-322:12, 329:7-330:18, Nov. 11, 2010 (D.E. 274) (the Trevinos conveyed one parcel of the property in the summer of 2003 and the other parcel in the spring of 2005, before the lien releases were filed in October 2005); Trial Tr. pp. 176:20-177:10, 179:8-182:12, Nov 12, 2010 (D.E. 272) (nothing prevented the Trevinos from conveying the property in July 2003 and spring 2005, and they had never tried to sell or convey the property prior to those dates). Therefore, as a matter of law, the Trevinos lacked standing to bring Chapter 12 claims. *See SCI Tex. Funeral Servs., Inc. v. Hijar*, 214 S.W.3d 148, 153 (Tex. App.– El Paso 2007, pet. denied) (standing is a question of law).

In its Order on summary judgment, the Court held that the Trevinos "qualify as 'debtors' and 'obligors' under Section 12.003 because they were obligated under the DOT and BML to make payments pursuant to the Retail Installment Contract until the liens were released in 2005." (D.E. 182, p. 10). The Court further found that "[d]uring the period from January 2002, when the DOT and BML were recorded, to July 2002, when [the land] was conveyed, the Trevinos qualified as both property owners and debtors or obligors within the meaning of the statute. There is no additional requirement in Section 12.003 that the Intervenors currently meet this status." (D.E. 182 p. 10).

With all due respect, this Court's finding is contrary to the plain language of Section 12.003, which does indeed reflect the Legislature's intent to limit standing to current owners, debtors and obligors. *See Molinet v. Kimbrell*, No. 09-0544, 2011 WL 182230, at *3 (Tex. Jan. 21, 2011) (text of statute is best expression of Legislature's intent). Section 12.003 states that the following persons may bring an action to enjoin violations of the statute or recover damages:

"the obligor or debtor, or a person who owns an interest in the real or personal property."  Tex. Civ. Prac. & Rem. Code Ann. § 12.003(a)(8).  Section 12.003 does not state that *former* obligors or debtors, or persons who *formerly owned* an interest in property, may bring an action to enjoin violations of the statute or recover damages.  *See In re State*, 325 S.W.3d 848, 854 (Tex. App.— Austin 2010, no pet.) (courts should presume that "excluded words were left out [of a statute] on purpose"); *Tex. Lottery Comm'n. v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010) (courts must "presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind"); *MCI Sales and Serv., Inc. v. Hinton*, 329 S.W.3d 475, 501 (Tex. 2010) (courts may not look to extraneous matters to find an intent a statute does not expressly state).

Section 12.003 is written in the present tense.  The Texas Code Construction Act provides that in a Texas statute "[w]ords [used] in the present tense include the future tense."  Tex. Gov't Code Ann. § 311.012(a).  The United States Supreme Court, analyzing a federal statute with a nearly identical provision, has held that a statute framed in the present tense includes the future tense, but excludes the past tense.  *Carr v. United States*, 130 S. Ct. 2229, 2236-37 (2010); 1 U.S.C. § 1.  The Texas Legislature could have conferred standing on a "*former* obligor or debtor, or a person who *owned* an interest in the real or personal property."  However, by choosing not to include such language in Section 12.003, the Texas Legislature limited the right to sue to persons with a current obligation or interest in the property.  *See Carr*, 130 S. Ct. at 2237; *see also Raymond v. Mobile Oil Corp.*, 983 F.2d 1528, 1534-35 (10th Cir. 1993) (rejecting plaintiffs' argument that current "participant" status, for statutory standing purposes, should be determined at time of  violation, rather than the time suit filed).  Where, as here, a statutory standing provision is written in the present tense, "[o]nly those individuals

identified in the statute with the specific relationship in existence at the time of the application have statutory standing." *In re Bachand*, No. HHDCV0940418835, 2010 WL 3326755, at *4 (Conn. Super. Ct. July 27, 2010).

In its Order on summary judgment, the Court relied on a Texas court of appeals decision in *Taylor Elec. Servs., Inc. v. Armstrong Elec. Supp. Co.*, 167 S.W. 3d 522 (Tex. App.—Fort Worth 2005, no pet.) to conclude that Section 12.003 standing is not limited to property owners. (D.E. 182 p. 9). *Taylor* held that Chapter 12 standing extends to *current* obligors and debtors, not that standing extends to *former* obligors and debtors. *Taylor*, 167 S.W. 3d at 531. The *Taylor* court held that "one who *is* liable as an obligor or debtor on the underlying debt, whether a property owner of the encumbered property or not, may pursue a cause of action under the fraudulent lien or claim statute." *Id.* (emphasis added). The court did *not* hold that one *formerly* liable as an obligor or debtor on the underlying debt could file suit. *Id.* Unlike the Trevinos, the plaintiff in *Taylor* was obligated on the underlying debt at the time the suit was filed. *Id.* Conversely, since the liens on the Trevinos' property had been released more than four years before they intervened in this civil action, the Trevinos could not have been obligors or debtors on the Deed of Trust ("DOT") or the Builder's and Mechanic's Lien ("BML") under any theory at the time they filed their interventions.[1]   (D.E. 98 ¶ 8; Trial Tr. pp. 329:7-330:18, Nov. 11, 2010 (D.E. 274)).  This Court ruled that the Trevinos, "qualify as 'debtors' and 'obligors' under Section 12.003 because they were obligated under the DOT and the BML to make payments pursuant to the Retail Installment Contract **until the liens were released in 2005**." D.E. 182, p. 10 (emphasis added).  In late 2009 and early 2010, when they filed their interventions in this action, the Trevinos were undisputedly not obligated under the DOT or the BML because the

---

[1] Indeed, Vanderbilt never considered the Trevinos to be obligors on the underlying debt.  (Trial Tr. pp. 148:13-16, 149:25-152:15, Nov. 12, 2010 (D.E. 272)).

DOT Release and BML Release had been filed more than four years earlier.  The Trevinos'

propery had consequently long ceased to serve as additional collateral by the time they filed the

interventions (if their property had ever so served).[2]   Moreover, the Trevinos had transferred

their interests in the property without encumbrance long before filing suit.  (Trial Tr. pp. 326:8-

327:5, 329:7-330:18, Nov. 11, 2010 (D.E. 274); Trial Tr. pp. 176:20-177:10, 179:8-182:12, Nov

12, 2010 (D.E. 272)).

       In its Order on summary judgment, this Court also cited *Esau v. Robinson*, No. 13-06-

00484-CV, 2008 WL 2375861 (Tex. App.—Corpus Christi June 11, 2008, no pet.) in support of

its finding that "the release of a fraudulent lien does not preclude the ability of a plaintiff to claim

damages under Section 12.0002(a)."  (D.E. 182 p. 11)  The facts of *Esau*, however, were much

different from those in the case at hand.  In *Esau*, the plaintiff suffered actual damages when he

tried but was unable to sell his encumbered land.  *Esau*, 2008 WL 2375861, at *1.  Moreover, the

plaintiff's attempts to obtain a release of the lien were unsuccessful until the morning of trial.  *Id.*

In contrast, the Trevinos never suffered actual damages because they successfully conveyed their

land, and the liens were released long before the Trevinos filed suit.  (D.E. 98 ¶ 8; D.E. 182, p. 8;

D.E. 245, Question Nos. 19 and 23; Trial Tr. pp. 321:13-322:12, 326:8-327:5, 329:7-330:18,

Nov. 11, 2010 (D.E. 274); Trial Tr. pp. 176:20-177:10, 179:8-182:12, Nov 12, 2010 (D.E. 272)).

Unlike the plaintiff in *Esau*, the Trevinos' Chapter 12 claim was moot before they intervened.

*Esau,* 2008 WL 2375861, at *1-2; *see also Arizonans for Official English v. Arizona*, 520 U.S.

43, 68 n. 22 (1997) (mootness is "the doctrine of standing set in a time frame: the requisite

personal interest that must exist at the commencement of the litigation (standing) must continue

throughout its existence (mootness).").

---

[2] The Trevinos denied signing the DOT and BML (or receiving or even knowing about those instruments before the DOT Release and BML Release were filed) so they cannot now argue that their property was encumbered by liens or that they were ever, at any time, obligors or debtors under the DOT or BML.

Applying the law to the undisputed facts, it is clear that the Trevinos lacked statutory standing, as a matter of law, to maintain a Chapter 12 claim.

**B.**   **Limitations Bar the Trevinos' Claims**

2.      As a matter of law, the Trevinos' fraudulent lien claim is barred by the applicable four-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.004.   As the Trevinos themselves allege, the lien filings at issue occurred in January 2002.  (D.E. 98 ¶ 1).  Maria Trevino filed her Chapter 12 claim on October 26, 2009.  (D.E. 1-2, p. 38).  Arturo Trevino filed his Chapter 12 claim in February 2010.  (D.E. 41)  However, the limitations period had run on the Trevinos' Chapter 12 claim in January 2006.  *See* Tex. Civ. Prac. & Rem. Code § 16.004.

As a matter of law, the very limited discovery rule exception to the statute of limitations does not apply to the Trevinos because:

a)      The Trevinos have not met their burden of proving that the discovery rule, a "very limited exception" to the statute of limitations, applies to their Chapter 12 claim.  *See Markwardt v. Tex. Indus., Inc.*, 325 S.W.3d 876, 886 (Tex.App.—Houston [14[th] Dist.] 2010, no pet.); *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988).  The discovery rule applies only if a claimant's injury is **both** "inherently undiscoverable" **and** "objectively verifiable." *Markwardt*, 325 S.W.3d at 886.

b)      The Trevinos' alleged injury was not objectively verifiable.  See D.E. 182, p. 13 n. 5.  The jury found that the Trevinos suffered no actual damages (D.E. 245, Question Nos. 19 and 23), and the Court found as a matter of law that the Trevinos suffered no tangible financial loss or mental anguish.  (D.E. 182, pp. 41, 43).  Therefore, the discovery rule does not apply.  *See S.V. v. R.V.*, 933 S.W.2d 1, 23 (Tex. 1996) (discovery rule inapplicable where

claimant's injury not objectively verifiable); *In re Coastal Plains, Inc.*, 179 F.3d 197, 215 (5th Cir. 1999) (same); *Bridges v. Metabolife Int'l, Inc.*, 119 F. App'x. 660, 664 (5th Cir. 2005).

    c)  The Trevinos' alleged injury was not inherently undiscoverable. The focus of the "inherently undiscoverable" requirement is not on whether the claimant actually discovered his particular injury within the limitations period but whether the injury "was the type of injury that generally is discoverable by the exercise of reasonable diligence.'" *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998); *Computer Assoc. Int'l., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456-57 (Tex. 1996). Because it is undisputed that the liens were filed in the public property records in January 2002 (D.E. 98 ¶ 1), any alleged injury would have been discoverable in the exercise of reasonable diligence. *See* Tex. Prop. Code Ann. § 13.002(1) (an instrument properly recorded in a county's public records "notice to all persons of the existence of the instrument"); *HECI*, 982 S.W.2d at 887 ("The need for stability and certainty regarding titles to real property has led courts to hold that real property records can constitute constructive notice."); *Archer Motor Sales Corp. v. Mazda Motor of Am., Inc.*, No. Civ. A. H-08-3587, 2009 WL 3012835, at *5 (S.D. Tex. Sept. 17, 2009) ("The availability of public records is sufficient to render information discoverable."). The Trevinos successfully conveyed lots 35 and 36 in July 2003 and spring 2005, respectively. (Trial Tr. pp. 321:13-322:12, 329:7-330:18, Nov. 11, 2010 (D.E. 274); Trial Tr. pp. 176:20-177:10, 179:8-182:12, Nov 12, 2010 (D.E. 272)). In the course of those transactions, the Trevinos could have discovered the liens, had they exercised reasonable diligence. *See* Trial Tr. 181:4-20, Nov. 12, 2010 (D.E. 272).

**C.**  **Vanderbilt Should be Granted Judgment as a Matter of Law**

    3.  Vanderbilt should be granted judgment as a matter of law as to the Trevinos' Chapter 12 claim because:

a)      The Trevinos failed to submit any evidence, much less a preponderance of the evidence, that Vanderbilt was directly involved in the filing of the liens at issue.

b)      The Trevinos failed to submit any evidence, much less a preponderance of the evidence, that Vanderbilt was aware of, approved, or authorized any notary fraud and/or forgery.

c)      The Trevinos did not plead agency with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. *See In re Enron Corp. Securities, Derivative & "Erisa" Litigation,* 540 F. Supp. 2d 759, 765 (S.D. Tex. 2007) ("[Wh]en agency is an element of a fraud claim, agency must be pleaded with the particularity required under Rule 9(b).") Pleading agency with particularity requires facts showing that when the alleged agent committed the fraudulent act, they did it pursuant to the actual or apparent authority of the alleged principal. *Whitney Nat'l Bank v. Med. Plaza Surgical Ctr., L.L.P.*, No. H-06-1492, 2007 WL 400094, at *3-4 (S.D. Tex. Feb. 1, 2007).  Conclusory allegations in this regard are insufficient.  *Id.  See also Hitachi Capital Am. Corp. v. Andress*, No. H-06-1959, 2007 WL 2752696, at *3-4 (S.D. Tex. Sept. 20, 2007).

d)      The Trevinos did not request and the jury was not charged on the issue of agency, the jury did not make any findings of fact on the issue of agency and, in any event, there is absolutely no evidence to support the conclusion that the alleged fraudulent liens were filed with the actual or apparent authority of Vanderbilt.

**D.      <u>Additional Grounds Support a Judgment as a Matter of Law for Defendants</u>**

4.      The Trevinos did not establish a prima facie case that CMH violated Chapter 12.

5.      The Trevinos did not establish a prima facie case that Vanderbilt violated Chapter 12.

02120758.1

6.      The Trevinos did not present a legally sufficient evidentiary basis for a reasonable jury to conclude that the Trevinos established all of the elements of a Chapter 12 claim.

7.      The Trevinos did not present a legally sufficient evidentiary basis for a reasonable jury to find that  the Builder's and Mechanic's Lien ("BML") or the Deed of Trust ("DOT") were fraudulent.   Evidence of improper or defective notarization does not render a lien fraudulent, as such a defect merely would impair the lien filer's ability to perfect the lien and maintain priority in a later dispute with a third party for rights to the collateral.   A defective notarization alone does not harm or injure a property owner.

8.      The Trevinos did not present a legally sufficient evidentiary basis for a reasonable jury to find that CMH knew that the BML or DOT were fraudulent.

9.      The Trevinos did not present a legally sufficient evidentiary basis for a reasonable jury to find that Vanderbilt knew that the BML or DOT were fraudulent.

10.      The Trevinos did not present a legally sufficient evidentiary basis for a reasonable jury to find that CMH intended the BML or DOT be given legal effect.

11.      The Trevinos did not present a legally sufficient evidentiary basis for a reasonable jury to find that Vanderbilt intended the BML or DOT be given legal effect.

12.      The Trevinos did not present a legally sufficient evidentiary basis for a reasonable jury to find that CMH specifically intended to cause the Trevinos to suffer financial injury.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a)(1)-(3); *see also Walker & Assocs. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 848 (Tex. App.—Texarkana 2010, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 12.002); *Aland v. Martin*, 271 S.W.3d 424, 430 (Tex. App.—Dallas 2008, no pet.); *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985); *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 897 (Tex. App.—Dallas 2008, no pet.); *see also* D.E. 182 pp. 32-33.

Defendants tendered a legally correct instruction on the specific intent requirement (Instruction No. 29) which the Court rejected.  (Trial Tr. pp. 17:14-18:17, Nov. 17, 2010 (D.E. 276)).

13.     Similarly, the Trevinos did not present a legally sufficient evidentiary basis for a reasonable jury to find that Vanderbilt specifically intended to cause the Trevinos to suffer financial injury.  *See* discussion in paragraph 12, *supra*.   Defendants tendered a legally correct instruction on the specific intent requirement (Instruction No. 29) which the Court rejected.  (Trial Tr. pp. 17:14-18:17, Nov. 17, 2010 (D.E. 276)).

14.     The Trevinos did not present a legally sufficient evidentiary basis for a reasonable jury to find that CMH desired to cause the Trevinos to suffer harm or believed that injury to the Trevinos was substantially certain to result from CMH's acts.  *See Gavrel v. Lieberman*, No. 02-08-414-CV, 2010 WL 1270334, at *2 (Tex. App.—Fort Worth Apr. 1, 2010, no pet.).  Defendants tendered a legally correct instruction on the principle that even if a document contains a notary defect, such a defect does not invalidate the agreement between the parties (Instruction No. 86) which the Court rejected.  (Trial Tr. pp. 10:8-23, 18:6-17, Nov. 17, 2010 (D.E. 276)).

15.     Similarly, the Trevinos did not present a legally sufficient evidentiary basis for a reasonable jury to find that Vanderbilt desired to cause the Trevinos to suffer harm or believed that injury to the Trevinos was substantially certain to result from Vanderbilt's acts.  *See* discussion in paragraph 14, *supra*.  Defendants tendered a legally correct instruction on the principle that even if a document contains a notary defect, such a defect does not invalidate the agreement between the parties (Instruction No. 86) which the Court rejected.  (Trial Tr. pp. 10:8-23, 18:6-17, Nov. 17, 2010 (D.E. 276)).   Additionally, there is no evidence that Vanderbilt employed any person who filed any lien on any property owned by the Trevinos.

16.     Maria Trevino, whom the jury found suffered no actual damages (D.E. 245, Question Nos. 19 and 23), did not present a legally sufficient evidentiary basis for a reasonable jury to find that she was entitled to recover statutory penalties of $10,000 from CMH.  *See* Tex. Civ. Prac. & Rem. Code Ann. §12.002(b)(1) ("A person who violates Subsection (a) is liable to each injured person for: (1) the greater of:  (A) $10,000; or (B) the actual damages caused by the violation.")

17.     Maria Trevino, whom the jury found suffered no actual damages (D.E. 245, Question Nos. 19 and 23), did not present a legally sufficient evidentiary basis for a reasonable jury to find that she was entitled to recover statutory penalties of $10,000 from Vanderbilt.  *See* Tex. Civ. Prac. & Rem. Code Ann. §12.002(b)(1).

18.     Arturo Trevino, whom the jury found suffered no actual damages (D.E. 245 Question Nos. 19 and 23), did not present a legally sufficient evidentiary basis for a reasonable jury to find that he was entitled to recover statutory penalties of $10,000 from CMH.  *See* Tex. Civ. Prac. & Rem. Code Ann. §12.002(b)(1).

19.     Arturo Trevino, whom the jury found suffered no actual damages (D.E. 245 Question Nos. 19 and 23), did not present a legally sufficient evidentiary basis for a reasonable jury to find that he was entitled to recover statutory penalties of $10,000 from Vanderbilt.  *See* Tex. Civ. Prac. & Rem. Code Ann. §12.002(b)(1).

20.     Maria Trevino did not present a legally sufficient evidentiary basis for a reasonable jury to find that she was an "injured person" under section 12.002(b)(1), and thus is not entitled to recover any statutory penalties.  The jury found that Maria Trevino suffered no actual damages (D.E. 245, Question Nos. 19 and 23), and the Court found as a matter of law that

Maria Trevino suffered no tangible or conclusive financial loss and no mental anguish damages. (D.E. 182 pp. 41, 43).

Courts interpreting Texas statutes are to "give meaning to each word and avoid treating statutory language as surplusage where possible." *Fresh Coat, Inc. v. K-2, Inc.,* 318 S.W.3d 893, 901 (Tex. 2010). Thus, section 12.002(b)(1) should not be construed to deprive the word "injured" of meaning; rather, the term "injured", which is not defined in the statute, should be given its ordinary and plain meaning. *See Mahaffey v. State,* 316 S.W.3d 633, 638 (Tex. Crim. App. 2010) ("Statutory terms that are not legislatively defined are generally construed as common usage allows"). Texas courts have consistently interpreted the term "injured person" or "injured party" to mean a person or party who has sustained actual damages. *See, e.g., Shambaugh v. Willard,* 45 S.W.2d 1105, 1106 (Tex. Civ. App.—El Paso 1932, no writ) ("The measure of damages for civil injury is that amount which will compensate the injured person for his actual injury."); *Fails v. Basse,* No. 07-08-00445-CV, 2010 WL 877537, at *2 (Tex. App. -- Amarillo 2010, pet. denied) ("Compensatory damages are those damages that will compensate the injured party for the injury sustained and are otherwise known as actual damages."); *Tate v. Hernandez,* 280 S.W.3d 534, 539 (Tex. App.—Amarillo 2009, no pet.) ("Instead, our jurisprudence allows the injured party to recover a judgment against the wrongdoer for the amount of actual damages proximately caused by the wrongful conduct."); *Mid-Century Ins. Co. of Texas v. McLain,* No. 11-08-00097-CV, 2010 WL 851407, at *2 (Tex. App.—Eastland 2010 March 11, 2010, no pet.) ("A motorist is uninsured if his or her liability insurance is insufficient to pay for the injured party's actual damages.") Likewise, the ordinary meaning of the related noun "injury," under Texas law, is actual harm or damage. *See Marauder Corp. v. Beall,* 301 S.W.3d 817, 822 (Tex. App.—Dallas 2009, no pet.); *Nguyen v. Yovan,* 317 S.W.3d 261, 271

14

(Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Teavis v, Taylor*, 162 S.W.2d 1030, 1038 (Tex. Civ. App.—Eastland 1942, writ ref'd w.o.m.).

21.     Similarly, Arturo Trevino did not present a legally sufficient evidentiary basis for a reasonable jury to find that he was an "injured person" under section 12.002(b)(1), and thus is not entitled to recover any statutory penalties.  *See* discussion in paragraph 20, *supra*.  The jury found that Arturo Trevino suffered no actual damages (D.E. 245, Question Nos. 19 and 23), and the Court found as a matter of law that Arturo Trevino suffered no tangible or conclusive financial loss and no mental anguish damages.  (D.E. 182 pp. 41, 43).

22.     As a matter of law, neither Maria Trevino nor Arturo Trevino is eligible to recover a $10,000 statutory penalty[3] under section 12.002(b)(1)(A), because neither of them suffered actual damages.  *See* D.E. 251, p. 7; D.E. 252, pp. 14-15; D.E. 254, pp. 3-6; D.E. 267, pp. 6-9.  Texas law precludes a claimant from recovering penalty damages where he or she has not suffered actual damages.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.002(a) (Chapter 41 "applies to any action in which a claimant seeks damages relating to a cause of action"); *Id.* § 41.001(5) ("'exemplary damages' means any damages awarded as a penalty"); *Id.* § 41.004(a) ("exemplary damages may be awarded only if damages other than nominal damages are awarded").

23.     Flores and King, who did not allege a declaratory judgment claim, were improperly awarded declaratory relief based on a claim asserted by the Trevinos.

24.     The Court should not award attorneys' fees or costs to the Trevinos in the future without sufficient evidentiary basis, which is lacking for the reasons set forth in the Clayton

---

[3] Section 12.002(b)(1)(A) provides for a statutory "penalty" as distinct from statutory "damages". *See* D.E. 251, n.5; D.E. 252, n.11; D.E. 254, n.3.

Parties' Response in Opposition to the Trevinos' Application for Attorneys' Fees (D.E. 294) and Objections to the Trevinos' Request to Enter Bill of Costs. (D.E. 293).

25.    Defendants allege and incorporate herein all grounds set forth below in support of their motion for new trial and their motion for remittitur.  For these reasons, Defendants request that the Court enter a judgment as a matter of law in favor of Defendants on all of the Trevinos' claims.

## MOTION FOR NEW TRIAL

Defendants allege and incorporate herein all grounds contained in Defendants' motion for judgment as a matter of law at the end of the Trevinos' case, which was made again at the close of all the evidence, and all of the grounds set forth above in support of this motion for judgment as a matter of law.  Without waiving any of those grounds, Defendants move this Court to set aside the Judgment and Amended Judgment based on the jury's verdict and order a new trial on the grounds set forth below, separately and severally.  In the Fifth Circuit, a new trial may be granted "if the trial was unfair, or prejudicial error was committed in its course."  *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 613 (5th Cir. 1985).  Defendants respectfully submit that during trial, several critical evidentiary rulings, when taken individually or as a whole, created prejudicial error entitling Defendants to a new trial.

1.    <u>Exclusion of Mr. Trevino's Prior Drug Conviction</u>**:**  This Court incorrectly ruled Arturo Trevino's conviction for drug trafficking inadmissible.  While admitting evidence of Arturo Trevino's 2007 conviction for transporting illegal aliens, this Court chose to exclude evidence of Arturo Trevino's 1995 felony conviction for drug trafficking.  (Trial Tr. 294:9 – 305:11, Nov. 11, 2010 (D.E. 274)).  Evidence of Mr. Trevino's drug trafficking conviction was admissible because its probative value substantially outweighed the risk of prejudice, and

16

Defendants provided the Trevinos with sufficient advance written notice of their intent to use such evidence.  Fed. R. Evid. 609(b).  Mr. Trevino's credibility was crucial to his claims, which were completely reliant on his testimony that the signatures on the DOT and BML were not his (Trial Tr. 322:13- 323:4, Nov. 11, 2010 (D.E. 274)).  Meanwhile, Defendants presented evidence that Mr. Trevino actually signed the DOT and BML.  *See United States. v. Thomas,* 914 F.2d 139, 142-43 (8th Cir. 1990) (affirming admission of an 18 year old conviction, explaining that "[w]here the credibility of one witness must be weighed directly against that of another, the probative value of a prior conviction may well be enhanced, rather than diminished.").  Unfortunately, this Court incorrectly focused its Rule 609 analysis on Mr. Trevino's assumed cooperation with authorities after his arrest as evidence that he was a truthful person.  (Trial Tr. 303:24 – 304:6, Nov. 11, 2010 (D.E. 274)).  Defendants respectfully submit, however, that Mr. Trevino's conviction for trafficking 200 pounds of marijuana was extremely probative evidence of a character trait relevant to his credibility as a witness – his willingness to engage in an extreme level of unlawful behavior based on the possibility of a quick and substantial financial gain.  Taken together with Mr. Trevinos' conviction for the illegal smuggling of humans, this evidence is highly probative because it shows a pattern of deceitful and illegal activity.  (Trial Tr. 294:9 – 305:11, Nov. 11, 2010 (D.E. 274)).  Accordingly, the Court's failure to allow the jury to hear this important character evidence was prejudicial error.

2.     Exclusion of Vanderbilt's Call Notes:  Vanderbilt's "call notes" (Clayton Parties' Exhibit 10) were incorrectly ruled inadmissible.  This Court incorrectly ruled that the call notes were not admissible under the business records exception to the hearsay rule, Fed. R. Evid. 803(6), for lack of trustworthiness because the Court had concerns about the credibility of the witness who would offer them on behalf of Vanderbilt, Ms. Kim Russell.  (Trial Tr. 191:17-19,

Nov. 10, 2010 (D.E. 271)).  Later in the trial, this Court again incorrectly refused to admit into evidence even a single call note that established that Flores and King actually knew that they had pledged the Trevinos' land in lieu of a down payment, allowing the note to be used only for the limited purpose of refreshing Ms. Russell's recollection of that telephone call.  (Trial Tr. 214:10-215:10, Nov. 10, 2010 (D.E. 271)).  These rulings were in error for the following reasons:

        a)     The refusal to admit the call notes into evidence was prejudicial error because the trustworthiness of a business record does not hinge on a court finding acceptable the witness seeking to offer them into evidence.  Rather, trustworthiness is "supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation." Fed. R. Evid. 803(6) advisory committee's note.  The testimony of Kim Russell properly established these predicates for admission of the call notes as business records under Rule 803(6).  (Trial Tr. 180:1-191:19, Nov. 10, 2010 (D.E. 271)).  To lay the foundation for the admission of a business record based on its trustworthiness, a party need only establish how a business record is recorded and kept; it is not also required to prove the trustworthy nature of the witness seeking to offer the record into evidence.  *See United States v. Parsee*, 178 F.3d 374, 380 (5th Cir. 1999) (business records gathered by one company can be offered by another company as evidence); *see also United States v. Dixon*, 132 F.3d 192, 197 (5th Cir. 1997) (business records admissible even where the offering witness "conceded that he did not personally create the records and that he did not personally know whether the records were true or accurate").

        b)     The call notes were critical to Defendants' case because they would have shown, among other things, that:

(i)      Significant circumstantial evidence existed that the Trevinos knew that the land had been pledged, as the call notes reflected King's efforts to have Vanderbilt release one of the parcels of property only days before Ms. Trevino actually deeded the land to her brother for tax reasons.  (Trial Tr. 217:7-218:11, 219:21-24, Nov. 10, 2010 (D.E. 271)).

(ii)      Flores and King were aware of the liens that had been placed on the Trevinos' land in lieu of down payment, despite their sworn denial to the contrary.  (Trial Tr. 217:7-218:11, 219:21-24, Nov. 10, 2010 (D.E. 271)).

(iii)      Flores and King were aware that their debt had been assigned to Vanderbilt, as they were sending payments to Vanderbilt and communicating with Vanderbilt about their debt.

(iv)      Flores and King never complained of harassment, threats, or other unconscionable behavior related to debt collection activities.

(v)      Vanderbilt never had any intent to foreclose on the Trevinos' property, as the call notes showed that Vanderbilt had accepted innumerable excuses for non-payment for many years, did not move for default/repossession the first 47 times Flores and King were in default, accorded Flores and King innumerable "alternative arrangements" that were subsequently breached and continued pursuing efforts to avoid repossession even after declaring default.

c)      Exclusion of the call notes was highly prejudicial to Defendants, because a core element of all of the claims of Flores, King and the Trevinos was that Defendants never informed them that the Trevinos' land was being pledged as collateral in lieu of a down payment. The call notes, that the Court incorrectly excluded, contained admissions by Flores and King of their awareness that the Trevinos' land had actually been pledged as collateral.  Admission of the

call notes would have seriously undermined the credibility of these witnesses on an issue crucial to the very heart of both their case and the Trevinos' case.  Accordingly, the Court's exclusion of the call notes was prejudicial error that denied Defendants their right to a fair trial.

        d)    In addition to being admissible as business records, the call notes and the statements contained therein were also admissible for the following reasons:

        (i)    As admissions by a party opponent under Federal Rule of Evidence 801(d)(2), the records were simply not hearsay.

        (ii)    The notes also contained admissible records of present sense impressions of Flores and King.  *See* Fed. R. Evid. 803(1).

        3.    <u>Exclusion of Defendants' Expert Testimony</u>**:** This Court incorrectly restricted the testimony of Defendants' proffered real estate expert Bryan Stone, who was prepared to explain, among other things, the purpose of, and usage within the industry of, the key documents at issue in this case, such as retail installment contracts, builders and mechanic's liens, deeds of trust and releases; the practices of the industries unique to manufactured homes; industry practices regarding the perfection of and release of liens; the general purpose of a lien on land; the general differences between a release releasing a lien on land and a release releasing the underlying debt and industry practices related thereto; the importance of title opinions and title searches; and the way that all of these practices and issues relate to the transaction at issue..  Such testimony would have been critical to rebut the wildly prejudicial allegations of Flores, King and the Trevinos regarding Defendants' alleged release of the debt, conspiracy and mass fraud.  At both the Motion in Limine stage and at trial, the Court decided to exclude critical parts of Stone's proffered testimony.  (D.E. 194; Trial Tr. 4:14 – 17:6, 91:7 – 97:20, 156:23 – 160:12, 165:22 – 168:12, Nov. 12, 2010 (D.E. 272)).  The Court permitted Defendants to ask Stone only about a

single topic regarding the custom and practice of mailing lien releases to landowners.   The Court's refusal to allow the jury to hear Stone's testimony was prejudicial error.

4.     <u>Exclusion of Flores' Failure to File Income Taxes:</u>   Flores' credibility was closely tied to the Trevinos' credibility, because they presented the same narrative about the transaction at issue.   The Court refused to allow the jury to hear evidence of Flores' failure to file or pay income taxes, which was prejudicial error.   A witness may be cross-examined about his credibility, and evidence of a witness' failure to file income tax returns is probative of his credibility. *See* Fed. R. Evid. 611(b); *United States v. Bustamante*, 45 F.3d 933, 946 (5th Cir. 1995).   Flores admitted during discovery that he failed to file income tax returns from 2005 through 2008 (Trial Tr. 5:17-23, Nov. 15, 2010 (D.E. 265)), and the jury should have been permitted to hear this information in assessing Flores' credibility (Trial Tr. 3:3-6:6, 84:6-93:24, Nov. 15, 2010 (D.E. 265)).   Given the nature of the claims in this case, Flores' credibility was critical to the jury's evaluation of competing testimony, and evidence of Flores' failure to file income tax returns was admissible to impeach his credibility.

5.     <u>Exclusion of King's and the Trevinos' Failure to File Income Taxes:</u>   The Court incorrectly excluded evidence of King's and the Trevinos' failure to file or pay income taxes, which was prejudicial error.   (D.E. 185-11 ¶ 13; Final Pre-Trial Conf. p. 45:6-15, Nov. 4, 2010 (D.E. 216)). *See* discussion in paragraph 4, *supra*.

6.     The verdict and the judgment, as amended, for the Trevinos are against the great weight of the evidence.

7.     Defendants reserve the right, prior to disposition of this motion, to add additional and further grounds through a review of the record and any available parts of the trial transcript.

02120758.1

8.      In the event that the Court enters judgment as a matter of law in whole or in part in Defendants' favor, the motion for new trial should be granted conditionally pursuant to Federal Rule of Civil Procedure 50(c)(1), in the event of reversal or vacatur on appeal.

9.      Defendants allege and incorporate herein all grounds set forth above in support of their motion for judgment as a matter of law and set forth below in their motion for remittitur. For these reasons, Defendants request that if the Court does not enter a judgment as a matter of law for Defendants on all claims of the Trevinos, that the Court grant a new trial on the Trevinos' Chapter 12 claim.

## MOTION FOR REMITTITUR

In the alternative, if this Court does not enter judgment as a matter of law for Defendants or order a new trial, Defendants seek a remittitur of the Trevinos' statutory damages award.  As grounds for the remittitur, Defendants assert the following, separately and severally:

1.      The foregoing grounds entitling Defendants to judgment as a matter of law, or alternatively, a new trial, entitle Defendants to remittitur as herein requested, and those grounds are expressly re-filed and adopted to the same extent as if set forth here anew.

2.      Defendants are entitled to a reduction of each of the Trevinos' statutory penalty awards based upon all the grounds entitling Defendants to judgment as a matter of law, or alternatively, a new trial, and those grounds are expressly re-filed and adopted to the same extent as if set forth here anew.

3.      The Trevinos' statutory penalty awards are due to be remitted because they did not prove that CMH violated section 12.002(a).

4.      The Trevinos' statutory penalty awards are due to be remitted because they did not prove that Vanderbilt violated section 12.002(a).

5.      Maria Trevino's statutory penalty award is due to be remitted because Maria Trevino is not an "injured person" and is therefore not entitled to recover statutory damages pursuant to section 12.002(b)(1).  *See* discussion in paragraph 20, *supra*.  The jury found that Maria Trevino suffered no actual damages (D.E. 245, Question Nos. 19 and 23), and the Court found as a matter of law that Maria Trevino suffered no tangible financial loss and no mental anguish damages.  (D.E. 182 pp. 41, 43).

6.      Similarly, Arturo Trevino's statutory penalty award is due to be remitted because Arturo Trevino is not an "injured person" and is therefore not entitled to recover statutory damages pursuant to section 12.002(b)(1).  *See* discussion in paragraph 20, *supra*.  The jury found that Arturo Trevino suffered no actual damages (D.E. 245, Question Nos. 19 and 23), and the Court found as a matter of law that Arturo Trevino suffered no tangible financial loss and no mental anguish damages (D.E. 182 pp. 41, 43).

7.      The Trevinos' statutory penalty is due to be remitted because neither of them suffered actual damages.  *See* discussion in paragraph 22, *supra*.

8.      If the Court does not grant judgment as a matter of law for the Defendants, or a new trial on the Trevinos' Chapter 12 claim, then the Defendants request that the Court remit the Trevinos' Chapter 12 judgment as follows:

a)      The Trevinos were not entitled to any statutory penalties from Vanderbilt because the Trevinos failed to submit any evidence, much less a preponderance of the evidence, that Vanderbilt was directly involved in the filing of the liens at issue or was aware of, approved, or authorized any notary fraud and/or forgery; and/or

b)      The Trevinos were entitled at most to a single statutory penalty of $10,000, because only one encumbrance was placed on their land for one manufactured home; and/or

c)      The Trevinos were entitled at most to a statutory penalty of $20,000 total between them - $10,000 for the BML and $10,000 for the DOT.  The evidence at trial showed that the Trevinos, at the time the BML and DOT were filed, each owned an undivided 50% interest in the property.  (*See* Clayton Parties' Trial Exhibit 41).  Joint owners of real property are in privity with each other, such that the recovery of damages by one spouse redounds to the benefit of the other.  *Bradley v. Armstrong Rubber Co.*, 130 F.3d 168, 179 (5th Cir. 1997).  Texas courts have awarded Chapter 12 statutory penalties based on the number of fraudulent liens filed against a piece of property, rather than the number of plaintiffs and defendants involved.  *See Chien v. Laws*, No. 2001-27190 (113th Dist. Ct., Harris County, Tex. July 29, 2002) (Finding of Fact and Conclusion of Law at ¶¶ 2, 17 and 21) (attached as Exhibit A to D.E. 251); *Chien v. Laws*, No. 2001-27190 (113th Dist. Ct.., Harris County, Tex. Aug. 14, 2002) (Judgment ¶ 4) (attached as Exhibit B to D.E. 251) (awarding married couple that jointly owned home a single $10,000 statutory penalty for fraudulent lien); *Wilhite v. Hassell*, No. CV-02-38860, 2002 WL 33964281 (91st Dist. Ct., Eastland County, Tex. Feb. 20, 2002) (Trial Order) (holding plaintiff entitled to recover a total of $50,000 in statutory penalties - $10,000 for each of five fraudulent liens filed against his property – from two defendants), *aff'd*, No. 11-05-00106-CV, 2005 WL 2401909 (Tex. App. – Eastland Sept. 29, 2005, no pet).

9.      The Trevinos' statutory penalty award is due to be remitted consistent with the points raised in Defendants' pre-judgment briefs (D.E. 251, D.E. 252, D.E. 254, D.E. 267) filed prior to the entry of this Court's Amended Final Judgment (D.E. 284).

## REQUEST FOR HEARING

Defendants respectfully request a hearing on this motion for judgment as a matter of law, or in the alternative, for new trial, or in the further alternative, for remittitur.

Dated:  March 25, 2011

Respectfully submitted,

/s/ Jorge C. Rangel
Jorge C. Rangel
Attorney-in-Charge
State Bar No. 16543500
Federal I.D. No. 5698
Jaime S. Rangel
State Bar No. 24033759
Federal I.D. No. 32226
The Rangel Law Firm, P.C.
615 Upper N. Broadway, Suite 2020
Corpus Christi, Texas  78477
Telephone: (361) 883-8500
Facsimile: (361) 883-2611
Email: jorge.c.rangel@rangellaw.com
Email: jaime.rangel@rangellaw.com

OF COUNSEL:
BAKER BOTTS L.L.P.
Cristina Espinosa Rodriguez
State Bar No. 00793701
Federal I.D. No. 20575
Timothy C. Shelby
State Bar No. 24037482
Federal I.D. No. 39044
Sarah J. Cottrell
State Bar No. 24065085
Federal I.D. No. 1043442
One Shell Plaza
910 Louisiana
Houston, Texas 77002-4995
Telephone:  (713) 229-1188
Facsimile:  (713) 229-7788
E-mail: cristina.rodriguez@bakerbotts.com
E-mail: tim.shelby@bakerbotts.com
E-mail: sarah.cottrell@bakerbotts.com

ATTORNEYS FOR VANDERBILT MORTGAGE AND FINANCE, INC. AND CMH HOMES, INC.

02120758.1

Patton G. Lochridge
State Bar No. 12458500
Carlos R. Soltero
State Bar No. 00791702
McGinnis Lochridge & Kilgore, L.L.P.
600 Congress Avenue, Suite 2100
Austin, TX 78701
Telephone: (512) 495-6000
Facsimile: (512) 495-6093
E-mail: plochridge@mcginnislaw.com
E-mail: csoltero@mcginnislaw.com

Thomas W. Thagard, III, *admitted pro hac vice*
Edward S. Sledge, IV, *admitted pro hac vice*
Maynard, Cooper & Gale, P.C.
2400 Regions/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 254-1000
Facsimile:  (205) 254.1999
E-mail:   tthagard@maynardcooper.com
E-mail:   esledge@maynardcooper.com

W. Scott Simpson, *admitted pro hac vice*
Ritchey, Simpson, Glick & Burford, PLLC
2700 Highway 280, Suite 203W
Birmingham, Alabama 35203
Telephone:  (205) 876.1600
Facsimile:  (205) 876.1616
E-mail:  wssimpson@ritcheysimpson.com

## CERTIFICATE OF CONFERENCE

I communicated with David Rumley, counsel for Intervenors, and Baldemar Gutierrez, counsel for Defendants/Counter-Plaintiffs, on the 23rd and 24th days of March, 2011, to confer about this motion.  Mr. Rumley and Mr. Gutierrez have not given their consent to this motion. Therefore, I assume that they are opposed to this motion.

/s/ Edward S. Sledge, IV
Edward S. Sledge, IV

02120758.1

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been filed pursuant to the electronic filing requirements of the United States District Court for the Southern District of Texas on this the 25th day of March 2011, which provides for service on counsel of record in accordance with the electronic filing protocols in place.

/s/ Lee E. Bains, Jr.
Lee E. Bains, Jr.

27