UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

VANDERBILT MORTGAGE AND     §
FINANCE, INC.,              §
                           §
        Plaintiff,          §
                           §
VS.                         §        CIVIL ACTION NO. C-09-312
                           §
CESAR FLORES, *et al*,      §
                           §
        Defendants.         §
                           §

## ORDER

Pending before the Court are Maria and Arturo Trevinos' Motion for Attorney's Fees (D.E. 285) and Motion to Enter Bill of Costs (D.E. 286), and Cesar Flores and Alvin King's Motion for Attorney's Fees (D.E. 290) and Motion to Enter Bill of Costs (D.E. 291). For the reasons stated herein, the motions are GRANTED IN PART as detailed below.[1]

**I.      Maria and Arturo Trevinos' Motions for Attorney's Fees and Costs**

On November 18, 2010, after a trial in the above styled action, the jury found in favor of Intervenors Maria and Arturo Trevino on their claim under the fraudulent lien statute under Tex. Civ. Prac. & Rem. Code § 12.002. The Court has entered an Amended Final Judgment awarding the Trevinos $60,000 each plus prejudgment interest. (D.E. 284.) Pursuant to §12.002(b), the Trevinos are entitled to attorney's fees and "court costs." See §12.002(b).

**A.      The Trevinos' Attorney's Fees**

In their Motion for Attorney's Fees, the Trevinos seek $1,683,650.28 in attorney's fees and related "nontaxable expenses." They reach this number from an initial total of

---

[1] Also pending is the Clayton parties' motion to strike Flores and King's Reply in Further Support of their Rule 54(d)(2) motion. (D.E. 314.) As explained below, this motion is GRANTED. The Clerk is hereby ORDERED to strike Flores and King's Reply (D.E. 305) from the record.

$2,115,592.62, consisting of $1,922,560 in attorney's fees and $193,032.62 in related nontaxable expenses.  They then apply a reduction of 54.7% for "exercise of billing judgment," leading to a total of $1,157,392.78, consisting of $1,052,515.00 in attorney's fees and $104,877.78 in related nontaxable expenses.  They then apply a fee enhancement of 150% to the $1,052,515.00 in attorney's fees, leading to the requested total of $1,683,650.28 in fees and expenses.

The Clayton parties raise the following objections to the proposed attorney's fees award: (1) the Trevinos have failed to segregate the time spent on successful versus unsuccessful claims and have failed to eliminate time spent in litigating against dismissed parties; (2) the Trevinos' request is unreasonable in light of the applicable factors, especially in light of the extreme difference between the Trevinos' final judgment ($120,000 plus prejudgment interest) and the requested fee award of over 1.5 million dollars.  (D.E. 294 at 2.)

The Court addresses each objection in turn.

### 1.    Failure to Segregate

As an initial matter, the Court finds the Trevinos' fee application is not defective due to their failure to segregate the fees expended on their distinct claims.

The Clayton parties point to the general rule that under both Texas and federal law, the party seeking an attorney's fee award bears the burden of proving that legal work relating to claims for which fees may be recoverable has been properly segregated from legal work relating to claims for which fees are not recoverable.  (D.E. 295 at 5-6) (citing, e.g., Hensley, 461 U.S. at 435 (when a plaintiff achieves only partial success, attorneys' fees should not be awarded for hours not "expended in pursuit of the ultimate result achieved"); Lear Siegler Services v. Ensil Int'l Corp., CIVA SA05-CV-679-XR, 2009 WL 5195884 (W.D. Tex. Dec. 18, 2009)(applying

Texas law)("The Fifth Circuit follows the general rule that successful and unsuccessful claims should be segregated when calculating attorney's fees."))

However, all of Flores and King's claims — including the fraudulent lien claim, the RICO claim, the money had and received claim, and the request for mental anguish damages — arise out of the same transaction: namely, the purchase of the mobile home and the attendant production and filing of the fraudulent Deed of Trust ("DOT") and Builder's and Mechanic's Lien ("BML").  Thus, the Trevinos' claims are too intertwined to differentiate effectively, and the duty to segregate, in general, does not apply.  See Snook v. Popiel (In re Snook), 168 Fed. Appx. 577, 580 (5th Cir. 2006) ("In Texas, where two or more claims are advanced and only some of the claims entitle a litigant to attorney fees, Texas courts have awarded fees for all claims that are too intertwined to differentiate effectively those that allow fees and those that do not.")

Likewise, the Trevinos need not segregate fees claimed for time spent on dismissed parties.   The various defendants were all related to Clayton Homes, Inc. and the business operations of CMH Homes or Vanderbilt, and the claims against them involved a common core of facts.  See Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 327 (5th Cir.), cert denied, 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995). ("We are here satisfied that LP & L's claims against the other defendants involved a common core of facts, and that LP & L was thus entitled to claim the hours it spent litigating against the other defendants. Consequently, we conclude that the district court did not err in refusing to sift through LP & L's hours and eliminate those spent in litigation against the other defendants."); see also Hensley, 461 U.S. at 434-35, 103 S.Ct. at 1940 (when claims against multiple parties share a "common core of facts" or "related legal theories," a fee applicant may claim all hours reasonably necessary to litigate

those issues); <u>Abell v. Potomac Ins. Co.</u>, 946 F.2d 1160, 1169 (5th Cir.1991) ("[W]here time spent on unsuccessful issues is difficult to segregate, no reduction of fees is required."), cert. denied, 504 U.S. 911, 112 S.Ct. 1944, 118 L.Ed.2d 549 (1992); <u>Nash v. Chandler</u>, 848 F.2d 567, 572 (5th Cir.1988) (finding no clear error where unsuccessful claims "highly relevant" to successful claim); <u>Cobb v. Miller</u>, 818 F.2d 1227, 1233 (5th Cir.1987) (holding claims against multiple defendants compensable because interrelated).

Accordingly, the Court need not dismiss the attorney's fee application due to failure to segregate and need not sift through the thousands of hours of records to eliminate hours spent in litigation of dismissed claims or against dismissed defendants.  <u>Louisiana Power & Light Co.</u>, 50 F.3d at 327.

### 2.        Reasonableness of Attorney's Fees.

That being said, after performing the appropriate analysis, the Court agrees with the Clayton parties that the Trevinos' proposed attorney's fees award is excessive and unreasonable and must be reduced accordingly.

The Fifth Circuit uses the "lodestar" method to determine attorney's fee awards. <u>Heidtman v. County of El Paso</u>, 171 F.3d 1038, 1043 (5th Cir. 1999). A lodestar is calculated by multiplying "the number of hours reasonably expended" by the attorney by "an appropriate hourly rate in the community for such work." <u>Id</u>.  After making this calculation, the Court may decrease or enhance the lodestar based on the relative weights of the factors set forth in <u>Johnson v. Georgia Highway Express, Inc.</u>, including: the time and labor required, novelty and difficulty of the issues, skill required, preclusion of other employment, time limitations, results obtained,

experience, reputation and skill of attorneys, "undesirability" of the case, and awards in similar cases.  488 F.2d 714, 117-719 (5th Cir. 1974).[2]

### a.      Reasonable Hourly Rate

In order to determine an appropriate attorney's fee award, the Court must first determine reasonable hourly rates for the Trevinos' attorneys.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. Tollett v. City of Kemah, 285 F.3d 357, 368 (5th Cir. 2002).

The movants seek fees only for the work done by David Rumley, who charges $800 an hour, and Elaine Brown, who charges $200 an hour.[3]  The rate charged by Mr. Rumley is above the prevailing market rates.  See Memon v. Pinnacle Credit Services, LLC, 2009 WL 6825243 at *3 (S.D. Tex. May 21, 2009) (finding prevailing market rate in the Southern District of Texas for

---

[2] Although state law controls the reasonableness of attorneys' fees where state law supplies the rule of decision, the analysis under Texas law is essentially the same.  Mid-Continent Cas. Co. v. Chevron Pipe Line Co., 205 F.3d 222, 232 (5th Cir. 2000).  The Texas Supreme Court has set forth eight non-exclusive factors for fact-finders to use to determine reasonableness of attorneys' fees under Texas law:

1. The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly.

2. The likelihood that the acceptance of the particular employment will preclude other employment by the attorney.

3. The fee customarily charged in the locality for similar legal services.

4. The amount involved and the results obtained.

5. The time limitations imposed by the client or by the circumstances.

6. The nature and length of the professional relationship with the client.

7. The experience, reputation, and ability of the attorney performing the services.

8. Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997).
[3] Movants state that they have deducted fees incurred by other attorneys at Wigington Rumley Dunn, L.L.P. in order to "eliminate duplicate and unnecessary work in the exercise of sound billing judgment."  (D.E. 285 at 18.)

debt collection cases to be $300-$350 per hour for experienced attorneys.)[4] A reduction to $350 per hour for the fees charged by Mr. Rumley is warranted.

### b.        Number of Hours Reasonably Expended

A fee application should include "contemporaneously created time records  that specify, for each attorney, the date, the hours expended, and the nature of the work done." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998).  "Hours that are excessive, redundant, or otherwise unnecessary" are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application. Hensley, 461 U.S. at 433-34 (internal quotations and citations omitted).  The court may also exclude hours from the lodestar calculation that were not properly documented.  See id.  "[W]here the documentation of hours is inadequate, the district court may reduce the award accordingly." See Hensley, 461 U.S. at 433, 103 S.Ct. at 1939.

The Court finds that counsel for the Trevinos did not consistently and adequately document the hours expended on the case and did not always exercise sound billing judgment. Mr. Rumley exhibits many of the same errors as counsel for Counter-Plaintiffs Cesar Flores and Alvin King, discussed below, including frequent duplicative billings and no reductions in hourly rate for travel time.  The Court adjusts the lodestar accordingly, as below.  See Hensley, 461 U.S. at 433-34

### c.        Adjustments to Lodestar

---

[4] The Court also takes judicial notice of the Texas State Bar's "Hourly Rates in 2009 Report," the most recent such report. This report states that the median hourly rate for Creditor-Debtor attorneys in Texas was $ 197 per hour.  For Securities Law attorneys, the median is $309 per hour.  The median hourly rate for attorneys in the Corpus Christi region was $ 198 per hour.  The high and low rates are not provided in the 2009 report, but in the 2005 report, the high for Creditor-Debtor attorneys was $350 per hour.

As said, the Court may adjust the lodestar to reflect what is "reasonable under the circumstances" of the specific case. Randolph v. Dimension Films, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009) (citing Lieb v. Topstone Indus., 788 F.2d 151, 156 (3d Cir. 1986)). The factors the Court considers include: the time and labor required, novelty and difficulty of the issues, skill required, preclusion of other employment, time limitations, results obtained, experience, reputation and skill of attorneys, "undesirability" of the case, and awards in similar cases. Johnson, 488 F.2d at 717-719.

The Trevinos have requested a 150% enhancement to the lodestar due to, *inter alia*, the "rare and exceptional result," the experience and ability of the attorney, the novelty of the issues presented, and the contingent nature of the fees. (D.E. 285 at 16-21).

Contrary to the Trevinos' assertion, the Court finds no multiplier of attorneys' fees is warranted. "[E]nhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts." Walker v. United States HUD, 99 F.3d 761, 771-772 (5th Cir. 1996) (quoting Alberti v. Klevenhagen, 896 F.2d 927, 936 (5th Cir. 1990)). Moreover, "the contingent nature of the case cannot serve as a basis for enhancement of attorneys' fees." Walker, 99 F.3d at 772 (overturning contingency multiplier rule).

Rather, the Court finds reductions to the lodestar are warranted in light of the amount of the judgment in proportion to the requested attorney's fees; in light of attorneys' fees awards in similar cases; and in light of excessive and redundant billing practices by counsel.

### (1)    Amount Involved and Results Obtained

The eighth Johnson factor considers the amount involved and the result obtained in the underlying action. Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1048 (5th Cir. 1998). The most

important consideration in determining the propriety of an attorney fees award is the degree of success obtained. Farrar v. Hobby, 506 U.S 103, 114 (1992).  If "a plaintiff has achieved only partial or limited success, the product of hours reasonably extended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Farrar, 506 U.S at 114 (quoting Hensley, 461 U.S. at 436).

In the Trevinos' case, the result ultimately obtained and the final amount awarded to the Intervenors was, in the end, modest.  The Court dismissed on summary judgment the majority of the Trevinos' claims.  The jury found in favor of the Trevinos on their fraudulent lien claim, but found no damages and awarded no actual damages.  The Trevinos received instead $60,000 each in statutory damages, plus prejudgment interest.  The Court did not award any exemplary damages, even though exemplary damages were authorized under Tex. Civ. Prac. & Rem. Code §12.002(b).  (D.E. 284.)

In light of these results, the Trevinos' requested attorney's fees award, totaling over 1.5 million dollars, is excessive and disproportionate, especially in light of the jury's finding of no actual damages.  See, e.g., Barker v. Eckman, 213 S.W.3d 306, 313-14 (Tex. 2006) (holding the proper approach when actual damages award was reduced on appeal to one-seventh the original amount was to remand to trial court to reexamine attorney's fees award in light of  damages reduction.)  Therefore, the Court finds that a lodestar reduction of 60% is appropriate.

**(2)     Awards in Similar Cases**

Awards in similar cases can be an illustrative benchmark for determining the appropriateness of an attorney's fee award.  Johnson, 488 F.2d at 717-719.  Consideration of this factor also warrants reduction.

Attorney's fees awards for other fraudulent lien cases under Section 12.002 range from $655, see Walker & Assocs. Surveying, Inc. v. Roberts, 306 S.W.3d 839 (Tex. App. - Texarkana 2010, no pet.), to $132,000, see Seabrook Venture II. v. Centurion Planning Corp., Inc., 2002 WL 34102388 (165th Dist. Court, Harris County, Tex. Feb. 15, 2002), aff'd, 176 S.W.3d 498, 504-05 (Tex. App. - Houston, 2004).  Only one other Chapter 12 case awarded more than $50,000 in attorney's fees.  See Austin v. Bonner, No. 2007-51857, 2009 WL 5211113 (280th Dist., Harris Cty, Tex. Oct. 21, 2009) (awarding $60,000 in fees for trial, $15,000 for appeal, and $15,000 for appeal to the Texas Supreme Court.)

Considering these precedents, the Court finds another lodestar reduction of 20% is warranted.

### (3)        Excessive and Redundant Billing

To support their motion for attorneys' fees, the Trevinos were required to provide contemporaneous time or billing records or other documentation for this Court to examine in order to discern which hours are compensable and which are not. Louisiana Power & Light Co, 50 F.3d at 324.  Litigants "take their chances" in submitting fee applications without adequate information for the court to determine the reasonableness of the hours expended or with vaguely described tasks such as "review pleadings," "correspondence," or documents.  Id. at 327.

Upon review of the provided records, the Court finds that counsel for the Trevinos did not consistently and adequately document the hours expended on this case and did not always exercise sound billing judgment.  Mr. Rumley exhibits many of the same errors as counsel for Counter-Plaintiffs Flores and King, discussed thoroughly below, including frequent duplicative and/or excessive billings and no reduction in hourly rates for attorney travel time.

For example, on June 28, 2010, Mr. Rumley sent no less than six consecutive emails to opposing counsel Christina Rodriguez regarding "Discovery," with each email taking 12 minutes and costing $160 in fees. (D.E. 285-1.)  On August 26, 2010, Mr. Rumley sent seven consecutive emails, 12 minutes, $160 each, to Baldemar Gutierrez regarding "Deposition of Lance Kimball."

This repetitive billing pattern reflects a lack of billing judgment.  See, e.g., Mississippi State Chapter Operation Push v. Mabus, 788 F.Supp. 1406, 1416, n. 22 (N.D. Miss., 1992) (noting that the billing attorney recorded repetitive "teleconferences with Sam," and concluding: "[w]heels may have been spinning, or in this case, telephone dials, but from looking at these time sheet entries, apparently no ground was covered.")

Mr. Rumley also records several trips to and from various parts of Texas, for which he billed his full $800/per hour rate.  For example, on September 30, 2010, he traveled to Sugarland, Texas for a deposition.  The trip took two hours and cost $1600 in fees.  (D.E. 285-1.) He made exactly the same trip less than a month later on October 27, 2010, again billing $1600 for two hours during which the records do not indicate he did any legal work. (D.E. 285-2)

Mr. Rumley should not have billed his full rate for these trips.  See Verizon Business Global LLC v. Hagen, 2010 WL 5157193, *13 (E.D. La. 2010) ("Attorney travel time should be compensated at a lower rate than legal work. Courts in this Circuit typically compensate travel time at 50% of the attorney's rate in the absence of documentation that any legal work was accomplished during travel time.") (citing Watkins v. Fordice, 7 F.3d 453, 459 (5th Cir.1993) (in Voting Rights Act case involving legislative redistricting, compensation for attorneys travel time was awarded at one half of the hourly rate allowed for the attorneys); Jiminez v. Paw-Paw's Camper City, Inc., 2002 WL 257691, at *23 (E.D.La. Feb.22, 2002) (awarding attorney fees for travel time at one-half of normal hourly rate in employment discrimination case); Paul v. CMC

Mfg., Inc., 1998 WL 527102, at *2 (N.D.Miss. Aug.6, 1998) (travel time should be billed at one-half the hourly rate of the lawyer involved); Jackson v. Capital Bank & Trust Co., 1994 WL 118332, at *26-27 (E.D.La. March 30, 1994)).

The proper remedy for omitting evidence of billing judgment is a reduction of the award by a percentage intended to substitute for the exercise of billing judgment.  In re Enron Corp. Securities, Derivative & ERISA, 586 F.Supp.2d 732, 755-756 (S.D.Tex., 2008) (citing, e.g., Saizan v. Delta Concrete Products Company, 448 F.3d 795, 800 (5th Cir. 2006) (finding the district court did not commit clear error in finding a failure to produce evidence of billing judgment nor abuse its discretion by imposing a ten percent reduction in the lodestar because of that failure)).

A district court should not accept faulty records with no reduction of the hours of the lodestar after recognizing the deficiencies.  Leroy v. City of Houston, 831 F.2d 576, 585 (5th Cir.1987).

In Leroy, the Fifth Circuit reversed a one million dollar district court award of attorneys' fees in a voting rights case and ordered a fee reduction of nearly seventy percent, id. at 586, stating:" 'where the documentation of hours is inadequate, the district court may reduce the award accordingly.' " Id. 831 F.2d at 586 (quoting Hensley, 461 U.S. at 433, 103 S.Ct. at 1939). For a district court "[t]o award $1 million in attorneys' fees and expenses [would be] excessive and an abuse of discretion." Leroy, 831 F.2d at 586.

In this case, the hours billed are redundant and excessive, and at times are improperly documented.  Accordingly, to account for the billing errors mentioned and to compensate for other similarly inappropriate billing practices that are not discernible from the record, another 10% adjustment to the lodestar is warranted.

### 3.    The Trevinos' Final Attorney's Fee Award

To summarize, the Court finds the hourly rate charged by Mr. Rumley should be reduced to $350/per hour to reflect prevailing market rates.  Per the suggestion of the movants, the Court assesses only the fees incurred by Mr. Rumley and Ms. Brown in the exercise of sound billing judgment.  (D.E. 285 at 18) (citing Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 799 (5th Cir. 2006)).  Mr. Rumley spent 2,167.7 hours (now billing at $350/hour) and Ms. Brown spent 616.40 hours (billing at $200/hour) working on this case.  This gives a lodestar of $881,975.00.  The Court then applies a 90% reduction to the lodestar due to the excessiveness of the proposed fee award in proportion to actual and statutory damages; in light of fees awarded in other Texas fraudulent lien cases; and in light of a general pattern of duplicative and excessive billings.  This leads to an attorney's fees award of $88,197.50.

### 4.    Non-Taxable Expenses

In addition to traditional attorneys' fees, the Trevinos seek $193,032.62 in "non-taxable expenses" for: airfare, car rentals, conference calls, copies, courier, document reproduction, expert fees, expert retainers, fuel, hotel, meals, mileage, miscellaneous, park validation, parking fees, postage, records, research, taxi, and long-distance telephone calls.  (D.E. 285 at 6-7.)

The Clayton parties argue that these "non-taxable expenses" cannot be recovered because they do not fall under the taxable costs allowed by 28 U.S.C. § 1920.  (D.E. 295.)  However, the Clayton parties assume erroneously that the requested "non-taxable expenses" are taxable costs requested pursuant to Rule 54(d)(1).  As one federal district court recently explained:

> Rule 54(d) contains two separate provisions for costs.  To request taxable costs, the prevailing party must file a bill of costs with the clerk. [citing local rule.] Taxable costs are taxed by the clerk rather than the court. Fed. R. Civ. Proc. 54(d)(1); [citing local rule]. The categories of taxable costs are circumscribed by 28 U.S.C. Section 1920. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) …. **By contrast, nontaxable costs are recoverable on a motion to the court under**

> **Rule 54(d)(2) along with attorney's fees.** Fed. R. Civ. Proc. 54(d)(2) ( "claim for attorney's fees and related nontaxable expenses") & Advisory Comm. Note to 1993 Am. ("This new paragraph establishes a procedure for presenting claims for attorneys' fees, whether or not denominated as 'costs.' It applies also to requests for reimbursement of expenses, not taxable as costs, when recoverable under governing law incident to the award of fees.").

RD Legal Funding, LLC v. Erwin & Balingit, LLP, 2011 WL 90222, *4-5 (S.D.Cal. Jan. 10, 2011) (emphasis added).

Federal law provides the procedure for recovery of nontaxable costs, but state law determined whether they are recoverable.  See id. (citing MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co., 197 F.3d 1276, 1281-82 (9th Cir.1999)); see also Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975) (where state law governs the rule of decision, state law controls the rules concerning attorney's fees.)

Thus, the movants' "non-taxable expenses" are recoverable along with attorney's fees on a motion under Rule 54(d)(2), so long as they are recoverable under Texas state law.  Fed. R. Civ. Proc. 54(d)(2).

 "It is the general rule in Texas that expenses incurred in prosecuting or defending a suit are not recoverable as costs or damages unless recovery of those items is expressly provided for by statute, is available under equitable principles, or is expressly provided for by contract."  See Shenandoah Associates v. J & K Properties, Inc., 741 S.W.2d 470, 486 (Tex.App.-Dallas 1987, writ denied) (internal citations omitted); Brandtjen & Kluge v. Manney, 238 S.W.2d 609, 612 (Tex.Civ.App.-Fort Worth 1951, writ ref'd n.r.e.).

In this case, the Trevinos are entitled to recover "court costs" under the Texas fraudulent lien statute.  Tex. Civ. Prac. & Rem. Code §12.002(b); see also Aland v. Martin, 271 S.W.3d 424, 426 (Tex.App. - Dallas, 2008) (awarding trial attorney's fees and "costs of court" to prevailing party on fraudulent lien claim).  Without direction from the statute itself or case law

addressing this particular issue, the Court looks to Texas decisions interpreting cost provisions in other statutes in order to determine what these "court costs" may include.

Under Texas law, "[t]he term 'costs' generally refers to fees or charges imposed by a court or its officers, i.e., filing and service fees." Ex Parte Williams, 866 S.W.2d 751, 753 (Tex.App.-Houston [1st Dist.] 1993, no writ) (interpreting "costs" in context of Section 11.18(a) of the Family Code) (citing Westech Eng'g. v. Clearwater Constructors, 835 S.W.2d 190, 206 (Tex.App.—Austin 1992, no writ)). "Expenses of litigation" are not to be awarded as costs of court. See Shenandoah Associates, 741 S.W.2d at 487 (interpreting "court costs" in the context of Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.50(c)); see also Gumpert v. ABF Freight System, Inc., 312 S.W.3d 237, 240 (Tex. App. -Dallas, 2010) (applying Shenandoah to interpret what costs are recoverable under Tex. Civ. Prac. & Rem. Code § 31.007(b), which authorizes a court to include in any judgment certain costs and fees of court); Flint & Associates v. Intercontinental Pipe, 739 S.W.2d 622, 626-27 (Tex. App. - Dallas, 1987) (finding no legal basis for recovery of "non-taxable court cost expenses" in a contract case under Tex. Civ. Prac & Rem. Code § 38, authorizing recovery of attorney's fees in successful breach of contract action).

The following have been held to be *not* recoverable as costs of court in Deceptive Trade Practices Act cases: "delivery services, such as Federal Express; travel; long distance calls; bond premiums; postage; reproduction expense; binding of brief; transcripts of testimony elicited during trial; office air-conditioning … and secretarial overtime." See Shenandoah Associates, 741 S.W.2d at 487; Brandtjen & Kluge v. Manney, 238 S.W.2d at 612. On the other hand, the following were recoverable as court costs: "filing fee, court reporter fee, transcript fees,

subpoena/citation fees, and deposition costs." Id. (citing Wallace v. Briggs, 162 Tex. 485, 491, 348 S.W.2d 523, 527 (1961)).

Under these principles, the Court finds all of the Trevinos' "non-taxable expenses" are simply "expenses of litigation" and, as such, are not recoverable as "court costs" under § 12.002(b). See Shenandoah Associates, 741 S.W.2d at 487.[5]

**B.     The Trevinos' Bill of Costs**

In their separate Motion to Enter Bill of Costs, the Trevinos seek $83,383.64 for citations, copies, depositions (including video depositions), filing fees, mediation fees, and a variety of transcripts. (D.E. 286.)  The Clayton parties object that some or all of the requested costs are not allowed because there is no provision for them in 28 U.S.C. § 1920.  (D.E. 293.)

Federal Rule of Civil Procedure 54(d)(1) provides, in part, that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).  However, when a prevailing party seeks reimbursement for costs under Rule 54(d)(1), a federal court is bound by the limits of 28 U.S.C. § 1920, absent contract or explicit statutory authority to the contrary.  Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 444-45, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).

Title 28 U.S.C. § 1920 provides that a federal court "may tax" as costs against the losing party six specified items, including, *inter alia*, fees of the clerk and marshal, fees for transcripts "necessarily obtained for use in the case," fees for printing and witnesses, and "the costs of making copies of any materials where the copies are necessarily obtained for use in the case."[6]

---

[5] To the extent that any of these non-taxable expenses were incurred as part of "deposition costs," it is not discernable from the billing record provided.  Therefore, the Court excludes them as inadequately documented.  See Hensley, 461 U.S. at 433, 103 S.Ct. at 1939.

[6] Section 1920 provides that a judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

The requested taxable costs must be enumerated in § 1920 in order to be awarded under Rule 54(d)(1). Mota v. University of Texas Houston Health Science Center, 261 F.3d 512 (5th Cir. 2001).

There is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs. Cheatham v. Allstate Ins. Co., 465 F.3d 578, 586 (5th Cir.2006). However, whether to award costs under Rule 54(d)(1) is entirely discretionary: "Section 1920 is phrased permissibly because Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party." Crawford, 482 U.S. at 444-445.

Having reviewed the Trevinos' Bill of Costs, attached exhibits, and the Clayton parties' objections, the Court finds that many of the requested costs are not recoverable under § 1920.[7] The Court makes the following reductions:

### 1.    Citations

The Trevinos request that the Clayton Parties be taxed for costs for "citations" in the amount of $670.00. All of the fees for citations except for one (a $55 fee for the citation to Clayton Homes on November 3, 2009) are listed as payable to private process servers, such as "Allen Civil Process." Private process server fees are not recoverable fees of the clerk and

---

(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

See § 1920.
[7] In addition to their objections based on § 1920, discussed below, the Clayton parties argue that the Trevinos should not recover costs relating to claims on which they did not prevail. (D.E. 293 at 2.) However, as explained above, the Court finds the claims were too intertwined to require segregation. See Snook, 168 Fed. Appx. at 580. Likewise, the Trevinos need not segregate costs spent on dismissed parties. The various defendants were all related to Clayton Homes, Inc. and the business operations of CMH Homes or Vanderbilt, and the claims against them involved a common core of facts. See Louisiana Power & Light Co., 50 F.3d at 327.

marshal under § 1920. <u>Cypress-Fairbanks Indep. School Dist. v. Michael</u> F., 118 F.3d 245, 257

(5th Cir.1997).  As one district court in this circuit explained:

> In <u>Cypress-Fairbanks Indp. Sch. Dist. v. Michael F</u>., 118 F.3d 245, 257 (5th Cir. 1997), the Fifth Circuit held that, absent exceptional circumstances, private service costs are not recoverable. <u>Cypress-Fairbanks</u>, 118 F.3d at 257 (citing <u>Zdunek v. Washington Metro. Trans. Auth</u>., 100 F.R.D. 689, 692 (D.D.C. 1983)).  In reaching this holding, the Fifth Circuit relied on <u>Zdunek v. Washington Metro. Trans. Auth</u>., 100 F.R.D. 689, 692 (D.D.C. 1983), which found that because "there is no statutory authorization for awarding the fees of [private] process servers as costs," an award of such fees is only warranted under exceptional circumstances. <u>Zdunek</u>, 100 F.R.D. at 692, 100 F.R.D. at 692.

<u>Interstate Contr. Corp. v. City of Dallas</u>, 2002 U.S. Dist. LEXIS 1496, 5-6 (N.D. Tex. Jan. 31,

2002)

The Trevinos have pointed to no exceptional circumstances in this case warranting

repeated use of private process servers.  Accordingly, the Court awards only $55 for the citation

to Clayton Homes on November 3, 2009, and no other citation costs.

### 2.      Depositions and Transcripts

28 U.S.C. § 1920(2) allows reimbursement for "fees for printed or electronically

recorded transcripts necessarily obtained for use in the case."  <u>See</u> § 1920(2).  The Trevinos seek,

pursuant to §1920(2), $73,208.54 in fees, consisting of $19,644.00 in transcript fees and

$53,564.54 in fees for taking of depositions.  (D.E. 286, Ex. 1, Ex. 2.)

### a.      Depositions

Although, in general, the costs associated with taking depositions of witnesses are

properly taxable, <u>see</u> <u>Studiengesellschaft Kohle v. Eastman Kodak Co</u>., 713 F.2d 128, 133 (5th

Cir.1983), the Fifth Circuit has held that fees for *videotaped depositions* are not recoverable as

taxable costs because they are not provided for in § 1920. <u>See</u> <u>West v. Nabors Drilling USA,

Inc</u>., 330 F.3d 379, 396 (5th Cir. 2003) ("We have explicitly held that videographer fees are not

recoverable as costs under § 1920.") (citing <u>Mota</u>, 261 F.3d at 530 (holding that costs of

videotaped depositions are not recoverable under § 1920); Coats v. Penrod Drilling Corp., 5 F.3d 877, 891 (5th Cir. 1993) (holding that video technician fees incurred for video depositions are not recoverable under § 1920)); see also Migis v. Pearle Vision, 135 F.3d 1041, 1049 (5th Cir. 1998) ("As to deposition fees, 28 U.S.C. § 1920(2) only allows for the recovery of 'fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case.' There is no provision for videotapes of depositions."); Sherman v. Harrah's New Orleans Casino, 2008 U.S. Dist. LEXIS 63648, *12 (E.D. La. Aug. 19, 2008) ("[T]he Fifth Circuit has held that the costs of videotaped depositions are not recoverable as costs under § 1920.")

The invoices included in the Trevinos' motion indicate that the Trevinos seek to recover costs for the video depositions of: Michael Shelton, David Jordan, Hugh Statum, Arturo Trevino, Bruce Moore, Jr., Kevin Clayton, Lucia Dusek, Guadalupe Rosenbaum, Christopher Kimball, Anita Perez, Minerva Martinez, Alicia Canales, Richard Canales, Veronica Rodriguez, Amber Krupacs, Matt Mallery, and Janet Fenner Masson.  The Court does not award these fees as they are not recoverable under §1920(2).[8]

The Clayton parties additionally object that the Trevinos have not demonstrated that the depositions, whether videotaped or not, were "necessarily obtained for use in the case."  See § 1920(2).

To obtain reimbursement for depositions under §1920(2), the prevailing party must demonstrate to the court's satisfaction that the depositions were necessary to the party's case.

---

[8] In other instances, the invoices state that the Trevinos are seeking to recover thousands of dollars for *editing* videotaped depositions for trial.  For example, the 9/10/2010 invoice number 22194 charges solely for "editing the deposition of Kevin Clayton," and the 11/17/2010 invoice number 22349 charges for 20.5 hours "trial prep –editing the above depositions."  This Court follows the reasoning of another district court in holding that "[b]ecause the Fifth Circuit does not interpret § 1920 to include videotape depositions, it would likewise exclude the cost of editing the video for use at trial." Datapoint Corp. v, Picturetel Corp. No. 3:93-CV-2381-D, 1998 WL 401630, at *4 (N.D. Tex. July 9, 1998); see also Auto Wax Co., Inc. v. Mark V Prods., Inc., No. Civ. A. 3:99-CV-0982-M, 2002 WL 265091, at *11 (N.D. Tex. Feb. 22, 2002) (holding that the costs of digitizing depositions of certain witnesses, "[like] the editing of videotape depositions for presentation at trial," is nontaxable because the videotape deposition itself is untaxable).

Fogleman v. ARAMCO (Arabian American Oil Co.), 920 F.2d 278, 285-286 (5th Cir. 1991).  If at the time the deposition is taken, the deposition could "reasonably be expected to be used for trial preparation, rather than merely for discovery, it may be included in the costs of the prevailing party." Id. at 285 (citations omitted). "The mere recitation with talismanic regularity of the phrase 'necessarily obtained for use in the case' [is not sufficient.] Some further showing is necessary."  American Key Corp. v. Cumberland Associates, 102 F.R.D. 496, 499 (N.D. Ga. 1984).  "The Court must make an express finding of fact that the evidence produced or the copies made were actually necessary." Datapoint Corp., 1998 WL 401630 at * 5.

The Clayton parties contend that the Trevinos impermissibly seek costs for a "host of depositions they did not use at trial and could not have reasonably expected to use for trial preparation[,]" including in particular the depositions of Gilbert Flores, Andrea Flores, Norma Zamora, Emma Escobar, Lucia Dusek, Guadalupe Rosenbaum, Anita Perez, Minerva Martinez, Alicia Canales, Richard Canales, and Veronica Rodriguez.  (D.E. 293 at 6.)

Counsel for the Trevinos, Mr. Rumley, states in his affidavit that he believes the "costs incurred for the deposition transcripts and videotaped depositions in this matter were reasonably necessary when the deposition was taken, even if not used at trial."  (D.E. 286, Ex. 2 at 2.)   He contends he was present at each deposition and believed at the time each deposition was taken that it was "reasonably calculated to lead to the discovery of admissible evidence." (Id.)

However, the standard under § 1920 is not relevance for discovery purposes; it is whether the depositions could "reasonably be expected to be used for trial preparation." Fogleman, 920 F.2d at 285.  The Court therefore finds Mr. Rumley's affidavit insufficient to demonstrate that all of these depositions were "necessarily obtained for use in the case" and recoverable under § 1920.  Accordingly, in addition to eliminating all costs for the taking of video depositions and

editing of video depositions, the Court eliminates any fees incurred in taking the depositions of: Gilbert Flores, Andrea Flores, Norma Zamora, Emma Escobar, Lucia Dusek, Guadalupe Rosenbaum, Anita Perez, Minerva Martinez, Alicia Canales, Richard Canales, and Veronica Rodriguez.

After these reductions, the Court awards $18,913.84 in deposition costs.

### b.    Transcripts

The Trevinos also claim $19,644.00 in fees incurred on transcripts as taxable costs under §1920(2).  Without explanation as to why any of these transcripts was necessary, the Trevinos have requested fees incurred in ordering transcripts for, *inter alia*, the initial pre-trial conference, a telephone conference, jury selection, and several days of the trial, including opening, closing, various witnesses, and comments among the Court and counsel following jury polling.  (D.E. 286, Ex. 3.)

The Court finds these expenses are not recoverable as costs because the Trevinos have not demonstrated why all (or any) of these transcripts were "necessarily obtained for use in the case" as required by 28 U.S.C. § 1920(2).  See Studiengesellschaft, 713 F.2d at 133 ("To award the cost of daily transcripts, the court must find that they were not 'obtained primarily for the convenience' of the parties but were 'necessarily obtained for use in this case.'"); Marmillion v. Am. Int'l Ins. Co., 381 Fed. Appx. 421, 430 (5th Cir. 2010) (unpublished) (upholding district court's finding that real time reporting and daily transcripts were not necessarily obtained for use in the case on the basis that "1) there were other attorneys at trial who could have taken notes and 2) the trial was not so complicated as to necessitate the use of real time reporting and daily transcripts"; the Fifth Circuit stated: "the cited evidence does not dispel the district court's finding that the transcripts were obtained primarily for the convenience of the parties.")

There is no evidence before the Court that the Trevinos used the requested transcripts, most of which were ordered during or following trial, in the course of litigating this case, let alone that the transcripts were necessary.  Accordingly, the Court declines to award the requested transcript fees under § 1920(2).  See Studiengesellschaft, 713 F.2d at 133; Marmillion, 381 Fed. Appx. at 430.

### 4.    Photocopies

The Trevinos also seek $6,923.10 in copying costs to reimburse counsel for fees incurred in producing 106,591 "Digital Prints," all produced on a single day, April 19, 2010.

28 U.S.C. § 1920(4) allows reimbursement for "fees for exemplification and copies of papers necessarily obtained for use in the case." § 1920(4).  However, again, the prevailing party must demonstrate necessity.  See Fogleman, 920 F.2d at 286 (explaining that the cost of copying other documents is subject to the same standard as that of copying depositions: reproductions necessarily obtained for use in the case are included within taxable costs, provided that the prevailing party demonstrates that necessity); see also American Key Corp., 102 F.R.D. at 499 ("Where copies are made for the mere convenience of the attorneys they are ordinarily not reimburseable.")  Charges for multiple copies of documents, attorney correspondence, and other such items are not recoverable. Fogleman, 920 F.2d at 286 ("[The losing party] should be taxed for the cost of reproducing relevant documents and exhibits for use in the case, but should not be held responsible for multiple copies of documents, attorney correspondence, or any of the other multitude of papers that may pass through a law firm's xerox machines.")

In this case, counsel have not demonstrated why all of these digital prints were necessary. In his affidavit, Mr. Rumley states that "[t]he costs associated with making copies were necessitated by the Clayton Companies' production of 106,591 pages of documents on compact

disks (CDs).  Rather than opening and closing 106,591 pages on CDs, it was necessary to have each document printed to review the Clayton Companies' production of documents."  (D.E. 286, Ex. 2 at 3).

The Court does not find this explanation sufficient to demonstrate that it was necessary, rather than simply convenient, to make digital prints of each page of each document provided on the compact discs.  § 1920; Fogleman, 920 F.2d at 286.

Accordingly, the Court declines to award the requested $6,923.10 in copying costs pursuant to § 1920(4).

### 5.    Meditation Fees

The Trevinos request reimbursement for mediation fees totaling $2500.  The costs of mediation are not recoverable costs under Section 1920.  See, e.g., Mota v. University of Texas Houston Health Science Center, 261 F.3d 512 (5th Cir. 2001) (district court "erred in taxing [the losing party] with the costs of mediation [because the expense did not fall] within section 1920).  Accordingly, no reimbursement is awarded for mediation fees.

To summarize, the Court awards: $82 in fees of the Clerk; $55 in fees for citations; and $18,913.84 in deposition costs.  The Court therefore awards the Trevinos $19,050.84 in taxable costs.[9]

## II.    Flores and King's Motions for Attorney's Fees and Costs

On November 18, 2010, the jury found in favor of Defendants/Counter-Plaintiffs Cesar Flores ("Flores") and Alvin King ("King") on each of their three claims against Plaintiff/Counter-Defendant Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt").  The Court has entered an Amended Final Judgment awarding Flores and King $215,000 each plus

---

[9] The Court notes that this is significantly more than the costs awarded to Counter-Plaintiffs Flores and King for the same case.  However, Flores and King presumably relied on the depositions, transcripts, and copies financed by the Trevinos' council.

prejudgment interest, based on their claim for common law fraud.  (D.E. 284.)  The Counter-Plaintiffs now seek $1,484,499.38 in attorney's fees and $2,057.00 in costs.  (D.E. 290.)  The Clayton parties have responded with objections.  (D.E. 295.)

### A.    Clayton Parties' Motion to Strike the Counter-Plaintiff's Untimely Reply in Support of Rule 54(d) Motion

On May 17, 2011, the Counter-Plaintiffs filed a motion with the Court to file a reply in support of their motion for attorney's fees, and the Court allowed them to file a reply.  (D.E. 303, D.E. 305.)  The Clayton parties have now filed a motion to strike the reply on the grounds that it raises new legal arguments not addressed in the motion or response and that it is a "disguised" motion to alter or amend the judgment under Fed. R. Civ. P. 59(e).  (D.E. 314).  The Court agrees.

In their reply, the Counter-Plaintiffs concede that no attorneys' fees are allowed based solely on their fraud claim, and state that they elect to recover under their Texas Debt Collection Practices Act ("TDCA") claim instead. (D.E. 303 at 1-2.)  On February 15, 2011, the court held a hearing to address Flores and King's recovery, and held that Flores and King would recover under their fraud claim.  (D.E. 279.)  Flores and King could have elected to recover based on their TDCA claim.  However, they did not do so. Accordingly, the Court entered an Amended Final Judgment under the theory of common law fraud.  (D.E. 284.)  Flores and King waited three months until  requesting a different result.  The time to file a motion to amend the judgment under Rule 59(e) has passed.  See Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.")  Also, the Court no longer has authority to amend the judgment under Rule 60(a), even if an election of remedies could be considered a "mistake arising from oversight or omission," as an appeal has now been docketed.

See Fed. R. Civ. P. 60(a) ("[A]fter an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.")

Accordingly, the motion to strike is granted.  Flores and King's reply (D.E. 305) is struck from the record.

### B.    Flores and King's Attorney's Fees

In their Motion for Attorney's Fees, Flores and King seek $1,484,499.38 in attorneys' fees and related "non-taxable expenses" in the amount of $14,185.36.  This amount is based on $1,069,578.75 in attorneys fees billed by six attorneys (Baldemar Gutierrez, J. Javier Gutierrez, David Gonzalez, Marie Mendez, Rebecca R. Vela, and Ruben Perez) for performing a total of 3114.35 hours of work.   A $79,912.50 reduction for billing judgment was then applied by eliminating fees for Ms. Vela, Mr. Gonzalez, and Mr. Perez, followed by a lodestar multiplier of 150% in light of, among other things, the exceptional result obtained in the case and the contingent nature of the fee arrangement in the case.  (D.E. 290).

The Clayton parties make the following objections to the Counter-Plaintiffs' proposed attorney's fees award: (1) Flores and King cannot recover attorneys' fees based on their fraud claim (2) Flores and King's application is fatally defective because they failed to segregate the recoverable from non-recoverable fees, and (3) Flores and King's proposed attorneys' fee award is unreasonable and should be significantly reduced.

Having reviewed the motion, the objections, and the applicable law, the Court finds that Flores and King are not entitled to attorneys fees based on their fraud claim.  However, as explained in the Amended Final Judgment, Flores and King will potentially recover for their TDCA claim or their Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, depending on the outcome of appeal.  (D.E. 284.)  As explained below, both of these statutes

allow the prevailing party to recover attorney's fees.  Therefore, the Court also determines the amount of attorney's fees to be awarded in such event.

### 1.      No Attorney's Fees Allowed Based On Fraud Claim

In the Amended Final Judgment, the Court held that Flores and King could recover actual and punitive damages in the amount of $215,000 based on their fraud claim.  (D.E. 284 at 5.) However, under Texas law, the Counter-plaintiffs are not allowed to recover attorneys' fees based only on a claim for common law fraud.  In MBM Financial Corp. v. The Woodlands Operating Co., L.P., 292 S.W.3d 660, 667 (Tex. 2009), the Texas Supreme Court explained that "Texas has long followed the 'American Rule' prohibiting fee awards unless specifically provided by contract or statute." Id. at 669.   But there is no statutory or contractual basis for an attorneys fee award based solely on a fraud claim.  See Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 304, 310-11 (Tex. 2006).  In Chapa, the Texas Supreme Court reversed a trial court's award of attorneys' fees for a fraud claim, stating that "[f]or fraud, [the plaintiff] could only recover economic damages, mental anguish, and exemplary damages, but not attorney's fees." Id.

Likewise, in Neeley v. Bankers Trust of Texas, 757 F.2d 621, 633 (5th Cir. 1985), the Supreme Court upheld a plaintiff's fraud claim.  However, the Court struck the award of attorneys' fees, concluding that "Texas law does not permit attorney fees in cases based only upon fraud." Id.  The Court stated:

> In Texas, a party may not recover attorney fees unless an express statutory provision authorizes such an award. The statutory provision on which [plaintiff] relies, Tex.Rev.Civ.Stat.Ann. art. 2226, does not encompass fraud claims, and we know of no other statute that does. We conclude, therefore, that [plaintiff] may not recover attorney fees on his fraud claim.

Id. (citations removed).

Based on this clearly established Texas law, Flores and King may not recover attorneys fees based solely on their fraud claim.[10]

The Court recognizes that Flores and King also prevailed under RICO and under the TDCA, which both allow for attorneys' fees.  A party who prevails under RICO, 18 U.S.C. §1962, may recover "the cost of suit, including a reasonable attorney's fee."  § 1964(c).  The most recent version of the TDCA, Texas Finance Code § 392.403, provides that "a person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs."  §392.403(b); see also In re Eastman, 419 B.R. 711, 736-737 (Bkrtcy.W.D.Tex., 2009) (explaining that recovery of attorneys' fees is allowed under plain language of TDCA).[11]

However, while conceding that RICO or the TDCA allow recovery of attorney's fees, the Clayton parties argue that, because Flores and King's damages award is based only on their fraud claim to avoid double recovery, (D.E. 284), they cannot use their RICO or their TDCA victory to obtain attorneys' fees.  The Court agrees.

---

[10] Flores and King also cannot receive attorney's fees based on any request for a declaratory judgment.  The Texas Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code § 37, does not provide an independent basis for recovering attorneys' fees when the declaratory relief is defensive and does not present new controversies.  MBM Financial Corp. v. The Woodlands Operating Co., L.P., 292 S.W.3d 660, 667 (Tex. 2009).  Here, Flores and King sought a declaratory judgment that their debt was released.  This was defensive and did not raise any new issues, as the release of their debt was the basis for all of their claims.

[11] While conceding that attorneys' fees are allowed under the TDCA, the Clayton parties argue that *exemplary* damages are not allowed under the updated version of the TDCA "[b]ecause exemplary damages are not specifically authorized by the DCPA[debt collection practices act.]"  (D.E. 295 at 3, n. 3.)  Thus, the Clayton parties contend, if Flores and King should choose to recover attorney's fees under the TDCA following appeal, they would forfeit their exemplary damages.  This is incorrect.  Texas courts have allowed punitive damages for TDCA claims.  In Morante v. American Gen. Fin. Ctr., 157 F.3d 1006, 1011 (5th Cir. 1998), plaintiffs brought suit under the TDCA against a creditor.  The creditor challenged the sufficiency of evidence and the award of exemplary damages.  In upholding the evidence and the exemplary damages award, the Fifth Circuit stated: "exemplary damages are available under the Texas [Debt Collection] Act. Id. (citing Brown v. Oaklawn Bank, 718 S.W.2d 678, 680 (Tex. 1986); Waterfield Mortgage Co. v. Rodriguez, 929 S.W.2d 641, 645-47 (Tex.App.--San Antonio 1996, no writ)); see also Pruncutz v. Quinney, 2001 WL 1627650, *5 (Tex.App.-Austin 2001) ("Punitive damages are available in cases involving the Texas Debt Collection Practices Act.) (citing Waterfield Mortgage Co. v.. Rodriguez, 929 S.W.2d 641, 645 (Tex.App.-San Antonio 1996, no writ)) (awarding punitive damages, applying Tex. Fin.Code Ann. § 392.001, et seq (West 1998)).

The Clayton parties do not cite any cases directly on point; but they cite to Fifth Circuit authority in similar situations, where the prevailing parties had to elect remedies to avoid double recovery.  See American Rice, Inc. v. Producers Rice Mill, Inc., 518 F.3d 321, 335-36 (5th Cir. 2008); Quest Med., Inc. v. Apprill, 90 F.3d at 1093-94, n. 21.  In such cases, the Fifth Circuit held that prevailing parties may not "pick and choose" remedies from different sources in order to maximize relief.  American Rice, 518 F.3d at 335.

In American Rice, the prevailing plaintiff in a trademark infringement suit sought lost profits under the Lanham Act, an injunction under both the Lanham Act and a breach of contract theory, and attorneys fees under both theories.  518 F.3d at 335.  The district court held that attorneys fees were allowed for the breach of contract claim, but not for the Lanham Act claim.  Id.  The district court determined that under Texas law, an election of remedies was warranted since the breach of contract and infringement claims sought compensation for same thing: namely, the competitor's use of an infringing mark.  Id.  Accordingly, the court held the plaintiff had to elect between lost profits damages under the Lanham Act or attorneys' fees under the breach of contract theory.  Id. at 335.

The Fifth Circuit upheld the decision, stating: "[w]ere this Court to grant both awards to [plaintiff], we would be picking and choosing from damage elements arising under different theories, which is impermissible under Texas law."  Id. at 336. (citing Quest Med., Inc. v. Apprill, 90 F.3d at 1093-94, n. 21 (under Texas law, "when a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief .... [plaintiff] cannot cut and paste elements of relief arising from different theories of recovery."))

In this case, as in <u>American Rice</u>, the Court has determined that an election of remedies is necessary in order to avoid double recovery, given that Flores and King have only suffered one injury: namely, payments made to Vanderbilt after their debt was released.  (D.E. 284 at 4.)  In the absence of an election by Flores and King, the Court has determined that Flores and King may receive actual and punitive damages based on their fraud claim.  (<u>Id</u>. at 6-7.)  As explained, no attorneys fees may be awarded based solely on a fraud claim.  <u>Chapa</u>, 212 S.W.3d at 304. The Court may not "pick and choose" among remedies, allowing Flores and King to obtain both punitive damages based on their fraud theory and attorney's fees based on either RICO or the TDCA.  <u>See</u> <u>American Rice</u>, 518 F.3d at 335-36.  Therefore, no attorney's fees shall be awarded to Flores and King based on their fraud claim.

### 2.        Attorneys' Fees Award Under TCDA or RICO

Nonetheless, recognizing that Flores and King may obtain attorneys' fees should they choose to recover, after appeal, based on their RICO or their TDCA claim, the Court also addresses herein the amount of attorneys fees Flores and King shall receive in such event.

### a.        Failure to Segregate Claims

As an initial matter, Flores and King's fee application is not defective due to their failure to segregate the fees expended on their distinct claims.  All of Flores and King's claims arise out of the same transaction: the purchase of the mobile home.  Their claims revolve around the same debt and the same fraudulent conduct by the Clayton defendants in releasing the debt while continuing to collect upon it.  Thus, their claims are too intertwined to differentiate effectively, and the duty to segregate, in general, does not apply.  <u>See</u> <u>Snook</u>, 168 Fed. Appx. at 580. Likewise, Flores and King need not segregate time spent on dismissed parties.   The various defendants were all related to Clayton Homes, Inc. and the business operations of CMH Homes

or Vanderbilt, and the claims against them involved a common core of facts.  See Louisiana Power & Light Co., 50 F.3d at 327.

### b.        Reasonableness of Attorney's Fees

That being said, after performing the appropriate analysis, the Court finds the attorney's fees proposed in Flores and King's motion to be excessive.  As explained above, the Court first calculates the lodestar by multiplying "the number of hours reasonably expended" by the attorney by "an appropriate hourly rate in the community for such work."  Heidtman, 171 F.3d at 1043.  After making this calculation, the Court may decrease or enhance the lodestar based on the relative weights of the factors set forth in Johnson, 488 F.2d at 117-719.

### (1)        Reasonable Hourly Rate

The Court must first determine reasonable hourly rates for Flores and King's attorneys. Hensley, 461 U.S. at 433.  The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. Tollett, 285 F.3d at 368.

The fees charged by the attorneys for Flores and King range from $125 an hour to $425 an hour for the lead attorneys, Baldemar Gutierrez, David Gonzalez  J. Javier Gutierrez ($375 per hour).  The rates charged by Mr. Baldemar Gutierrez ($425 per hour), Mr. Gonzalez ($425 per hour), and Mr. J. Javier Gutierrez ($375 per hour) are higher than the prevailing market rates. See Memon, 2009 WL 6825243 at *3.

A reduction to $350 per hour for the fees charged by these three attorneys is warranted.

### (2)      Number of Hours Reasonably Expended

A fee application should include "contemporaneously created time records  that specify, for each attorney, the date, the hours expended, and the nature of the work done." <u>Kirsch</u>, 148 F.3d at 173.

As discussed further below, the Court finds that the movants have not consistently and accurately documented their hours under these principles.  In calculating the lodestar, the Court excludes hours billed on August 30, 2010 and October 22, 2010, where Baldemar Gutierrez billed over 24 hours in the day, billing 25.65 and 28.35 hours, respectively.  <u>See</u> <u>Hensley</u>, 461 U.S. at 433, 103 S.Ct. at 1939 ("where the documentation of hours is inadequate, the district court may reduce the award accordingly.") Also, as below, the Court will make a downward adjustment to the lodestar to account for other billing errors that are not as easily ascertainable from the records.  <u>Id.</u> (court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.)

### (3)      Adjustments to Lodestar

As said, the court may adjust the  lodestar to reflect what is "reasonable under the circumstances" of the specific case.  <u>Randolph</u>, 634 F. Supp. 2d at 800.  The factors the court considers include: the time and labor required, novelty and difficulty of the issues, skill required, preclusion of other employment, time limitations, results obtained, experience, reputation and skill of attorneys, "undesirability" of the case, and awards in similar cases.  <u>Johnson</u>, 488 F.2d at 717-719.

Contrary to the Counter-Plaintiffs' assertion, no multiplier of attorneys' fees is warranted. "[E]nhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings  by the courts."   <u>Walker</u>, 99 F.3d at 771-

772.  Moreover, "the contingent nature of the case cannot serve as a basis for enhancement of attorneys' fees." <u>Id.</u> at 772.

Instead, the Court finds reduction to the lodestar is warranted in light of attorneys' fees awards in similar cases; the result obtained relative to the proposed fee; and the Counter-Plaintiffs' insufficiently documented and/or excessive or redundant billing.

### a)      Awards in Similar Cases

The Court has reviewed published TDCA and Fifth Circuit RICO cases that were tried and resulted in attorneys' fees awards.  For TDCA cases, the highest attorneys' fees award was $56,143.77 (including costs).  The lowest was $2,732 in attorneys' fees, plus $410 in costs.  For RICO cases, the highest award was $74,156.25.  The lowest award for RICO was $6,160, with an actual damage award of $45,000 a piece ($15,000 trebled) under RICO and $3,500 a piece under another statute, leading to a total award of $291,000.  (D.E. 295, Ex. 2, 3.)

Compared to the awards granted in these cases, Flores and King's requested award of $1,484,499.38 is extraordinarily excessive, especially when the damages Flores and King could have recovered (not counting the mandatory damages cap) was $315,000 a piece plus interest. <u>Compare</u> <u>Ducote Jax Holdings LLC v. Bradley</u>, 335 Fed. Appx. 392, 402 (5th Cir. 2009) (highest-awarding of surveyed cases, upholding award of $74,156.25 in attorneys' fees when the plaintiffs took home a settlement, following trial on their RICO claim, in the amount of $2,144,200.00).

Accordingly, a 40% reduction to the lodestar is warranted.

### b)      Result Obtained Relative to Proposed Fee

The eighth Johnson factor considers the amount involved and the result obtained in the underlying case.  Migis, 135 F.3d at 1048.  The degree of success obtained is the most critical factor in determining the reasonableness of a fee award.  Farrar, 506 U.S at 114.

The Court does not agree with the Clayton parties that Flores and King enjoyed "limited success at trial."  (D.E. 295 at 8-9.)  Flores and King were awarded actual damages of $15,000 on their fraud claim; $12,000 on their TDCPA claim; and $15,000 on their R.I.C.O. claim.  The jury also awarded them $300,000 in punitive damages for their state law claims (which under Texas law cannot exceed $200,000).  That is, the jury found Vanderbilt liable for twenty times actual damages.  This is not "limited success."

Nonetheless, the Counter-Plaintiffs request nearly one and a half million dollars in attorneys' fees ($1,484,499.38).  This is over six times the maximum amount of damages Flores and King could have obtained.  "Regardless of the effort and ability of [Flores and King's] lawyers, we conclude that these ratios are simply too large to allow the fee award to stand."  See Migis, 135 F.3d at 1048 (where the attorney's fee award was over six and one-half times the amount of damages awarded, the Fifth Circuit found district court abused its discretion by failing to give adequate consideration to the result obtained relative to the fee, and reduced fee accordingly).

Another 40% reduction to the lodestar is warranted.

### c)      Insufficient Documentation and Excessive or Redundant Billing Practices

As explained above with respect to the Trevinos' attorney's fees motion, Flores and King were required to provide contemporaneous time or billing records or other documentation for the

Court to examine in order to discern which hours are compensable and which are not.  Kellstrom, 50 F.3d at 324.

A review of the billing records provided indicates that the Counter-Plaintiffs' attorneys did not consistently and accurately document their time to support their proposed bill.

For example, as noted above, Baldemar Gutierrez billed for more than 24 hours in a day on August 30, 2010.  (D.E. 290-4 at 7-8) (billing 25.65 hours).  He did so again on October 22, 2010.  (Id. at 32-35) (billing 28.35 hours).

In addition, like Mr. Rumley, Mr. Gutierrez charged his full fee for travel time.  For example, on August 2, 1020, he billed 1.50 hours at his usual rate of $425 per hour to travel to Corpus Christi for the deposition of the Clayton parties' expert Bryan Stone.  (D.E. 290-3, at 41.)  As explained above, Mr. Gutierrez should not have charged his full rate for travel time unless he was also working during that time. See, e.g., Hagen, 2010 WL 5157193 at *13.

There are also several instances of repetitive or duplicative entries.  For example, on October 11, 2010, Gutierrez records three consecutive entries entitled: "EMAIL CR. W/ DAVID RE: EXHIBITS FOR TRIAL."  Each email took one quarter of an hour.  Similarly repetitive entries appear throughout the record.   As explained above with respect to Mr. Rumley, who displayed similar habits, this repetitive billing pattern reflects a lack of billing judgment.  See, e.g., Mississippi State Chapter Operation Push, 788 F.Supp. at 1416, n. 22.

In general, the Counter-Plaintiffs' attorneys, like the Trevinos' attorney, claim hours that are simply excessive. See Mississippi State, 788 F.Supp. at 1416 (citing Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1302 (11th Cir.1988) ("Redundant hours generally occur when more than one attorney represents a client.")).  All of these attorneys engaged in a plethora of undefined or insufficiently described "emails" with other attorneys, also

billing very high rates.  The hourly rates requested "are of such magnitude" so as to indicate that "the attorneys should have been able to decide on proper strategy" and other matters without the inordinate emailing that took place.  Mississippi State, 788 F.Supp. at 1416-17 (quoting In re Olson, 884 F.2d at 1429; Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1302 (11th Cir.1988) ("Redundant hours generally occur when more than one attorney represents a client."))  Thus, a reduction of hours is compelled on the basis of redundancy and excessiveness.  Mississippi State, 788 F.Supp. at 1417 (reducing improperly documented hours by 55 percent) (citing Hensley, 461 U.S. at 433, 103 S.Ct. at 1939; Beaumon v. City of Ridgeland, Miss., 666 F.Supp. 937, 942 (S.D.Miss.1987) (court cut by one-half hours claimed for numerous conferences as excessive.))

Although, as explained above, the Court has omitted certain hours under the lodestar, the Court has noted many other instances of poor record-keeping, and there are likely others that are not discernable from the record.  Therefore, "the court must estimate the reduction to be made because of such insufficient documentation."  In re Olson, 884 F.2d 1415, 1429 (D.C.Cir.1989).  The Court finds another 10% reduction to the lodestar is appropriate.

### c.      Final Attorneys' Fees Award Under TDCA or RICO

In sum, the Court does not find that the requested lodestar amount of $1,069,578.75 is reasonable.  Instead, the Court reduces the hourly rates of the top three attorney's to $350 per hour to more closely reflect prevailing market rates.  The Court omits all hours billed by Baldemar Gutierrez on the days of August 30, 2010 and October 22, 2010 (25.65 hours and 28.35 hours, respectively).

This leads to the following billing summary: 1970.45 hours for B. Gutierrez ($350/hour); 187.40 hours for J. Gutierrez ($350/hour); 87 hours for David Gonzalez ($350/hour); 472 hours

for Marie Mendez ($125/hour); 21 hours for Rebecca Vela ($125/hour); 322.50 hours for Ruben Perez ($125/hour).   This gives a lodestar of $887,635.00.

Per the suggestion of the movants, the Court eliminates $79,912.50 in fees incurred by Mr. Gonzalez, Ms. Vela and Mr. Perez in the exercise of sound billing judgment.   (D.E. 285 at 18) (citing Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 799 (5th Cir. 2006)).   This leads to a lodestar of $807,722.50.

The Court also does not find that the suggested fee enhancement of 150% is warranted. Instead, the Court applies a reduction of 90 percent in light of attorneys' fees awards in similar cases;  in light of the result obtained relative to the proposed fee award; and in light of a general pattern of insufficiently documented or inappropriate billing.   This leads to an attorneys' fees award of $80,772.25.

Again, this sum will only be awarded if Flores and King take judgments under either their TDCA claim or their RICO claim.

### d.    Non-Taxable Expenses

In addition to traditional attorneys' fees, Flores and King seek $14,185.35 in related "non-taxable expenses" for: airfare, copies, courier services, fuel, hotels, meals, "miscellaneous," postage, records, and research.  (D.E. 290 at 6-7.)[12]

The Clayton parties argue these "non-taxable expenses" cannot be recovered because they do not fall under the taxable costs allowed by 28 U.S.C. § 1920.  (D.E. 295.)  However, as explained above, the Rules allow a party to file a claim for attorney's fees and related nontaxable expenses.  See Fed. R. Civ. P. 54(d)(2).   Whether the expenses are recoverable depends on the

---

[12] Specifically, Flores and King' seek reimbursement for: Airfare: $3,307.15; Fuel: $573.00; Hotel: $6,944.32; Meals: $504.84; Copies--IH: $2,012.50;13 Courier: $32.64; Postage—IH: $260.56;14 Records—Misc: $21.00; and Research: $18.00.15; and $510.52 in "miscellaneous" expenses, including "drinks for depos" and "incidental trial expenses."

underlying law on which the claim is based. See RD Legal Funding, LLC, 2011 WL 90222 at *4-5.  Thus, the Court must separately address recovery of attorney's fees and related expenses under the TDCA and RICO.

### (1) Non-Taxable Expenses Under the TDCA

When state law provides the rule of decision, federal law provides the procedure for recovery of nontaxable costs, but state law determined whether they are recoverable.  See RD Legal Funding, LLC, 2011 WL 90222 at *4-5 (citing MRO Commc'ns, Inc., 197 F.3d at 1281-82).  Thus, the movants' "non-taxable expenses" are recoverable under their TDCA claim along with attorney's fees, so long as they are recoverable under Texas state law.  Fed. R. Civ. Proc. 54(d)(2); see also id.

A prevailing party under the TDCA may recover "costs" along with "attorney's fees reasonably related to the work performed."  Tex. Fin. Code §392.403(b).  However, as explained above, under Texas law, the following have been held to be not recoverable as costs of court: "delivery services, such as Federal Express; travel; long distance calls; bond premiums; postage; reproduction expense; binding of brief; transcripts of testimony elicited during trial; office air-conditioning … and secretarial overtime."  See Shenandoah Associates, 741 S.W.2d at 487; Brandtjen & Kluge v. Manney, 238 S.W.2d at 612.

Accordingly, Flores and King could not recover the requested "non-taxable expenses" under their TDCA claim.

### (2) Non-Taxable Expenses Under RICO

On the other hand, if Flores and King recover under their federal RICO claim they could recover the requested "non-taxable expenses."  RICO contains a fee-shifting provision, stating that a prevailing party under 18 U.S.C. §1962 may recover "the cost of suit, including a

reasonable attorney's fee."  § 1964(c). In a RICO case, costs may include those expenses which are incorporated neither in the lawyer's billing hours nor the statutory costs.  See Hertz Corp. v. Caulfield, 796 F.Supp. 225, 229 (E.D. La. 1992) (rejecting defendant's argument that "costs" allowed under RICO are the same as taxable 'costs' awarded under 28 U.S.C. § 1920 pursuant to Rule 54(d)).

As in civil rights cases, the prevailing party under RICO may recover reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone. See Hertz, 796 F.Supp. at 229 (citing Abell v. Potomac Ins. Co., 858 F.2d 1104 (5th Cir.1988) (applying rules fashioned for awarding attorney's fees in civil rights actions to a RICO case); Allen v. Freeman, 122 F.R.D. 589, 591 (S.D.Fla.1988); Associated Builders & Contractors, Inc. v. Orleans Parish School Board, 919 F.2d 374, 380 (5th Cir.1990)); see also System Management, Inc. v. Loiselle, 154 F.Supp.2d 195, 212 (D.Mass., 2001) (rejecting losing party's argument that "costs" outside those enumerated in §1920 cannot be awarded in a RICO case, and awarding reasonable out-of-pocket expenses incurred by attorneys).[13]

---

[13] The court in System Management explained:

> The Supreme Court has attempted to give the word "costs" a consistent meaning in federal law. See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) (harmonizing "costs" in Federal Rule of Civil Procedure 54(d) with "costs" in 28 U.S.C. § 1920). In the course of an opinion holding that expert witness fees cannot be shifted to the losing party under the Fees Act, W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991)-a holding nullified by Congress, 42 U.S.C. § 1988(c)-the Supreme Court noted that the word "costs" in fee-shifting statutes should be given the same meaning as the word "costs" in section 1920 of Title 28, 499 U.S. at 87 n. 3, 111 S.Ct. 1138. The Supreme Court went on to note, however, that reasonable out-of-pocket expenses incurred by the attorney and normally charged to the client could be awarded as part of the attorneys' fees. Id. (citing Northcross v. Bd. of Educ., 611 F.2d 624, 639 (6th Cir.1979) ("Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of § 1988."); see also McLaughlin ex rel. McLaughlin v. Boston Sch. Comm., 976 F.Supp. 53, 65 (D.Mass.1997) (Garrity, J.) ("customarily billed directly to the client and shown to have been incurred reasonably and necessarily").

154 F.Supp.2d at 204.

Accordingly, if recovery is based on their RICO claim, Flores and King may recovery their requested $14,185.35 in "non-taxable expenses" pursuant to 18 U.S.C. § 1964(c), along with their attorney's fees.

### C.      Flores and King's Bill of Costs

In their separate Motion to Enter Bill of Costs, Flores and King seek $2,057.00 in taxable costs pursuant to Fed. R. Civ. P. 54(d)(1), as allowed under 28 U.S.C. § 1920.  See § 1920; Crawford, 482 U.S. at 444-45.

As said, the costs allowed under § 1920 are: 1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;  (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

For the reasons explained above with respect to the Trevinos' motion to enter bill of costs, Court finds the requested taxable costs are recoverable under § 1920 with the following exceptions:

Flores and King may not recover any of the $280 in fees incurred on private process servers.  See Cypress-Fairbanks Indep. School Dist., 118 F.3d at 257; Interstate Contr. Corp., 2002 U.S. Dist. LEXIS 1496 at *5-6.

Flores and King may not recover for the taking of video depositions. See, e.g.,  Coats, 5 F.3d at 891. The Court accordingly eliminates the $400 in fees incurred in taking the video depositions of Cesar Flores and Emma Escobar.

Flores and King may not recover the $1,000 in mediation fees.  (D.E. 291, Ex. 1, p. 3.) The costs of mediation are not recoverable costs under Section 1920.  See, e.g., Mota, 261 F.3d 512 (5th Cir. 2001) (district court "erred in taxing [the losing party] with the costs of mediation [because the expense did not fall] within section 1920).

Accordingly, Flores and King are awarded $377.00 in taxable costs pursuant to Rule 54(d)(1).

**V.     Conclusion**

For the reasons stated above, the Court GRANTS IN PART Maria and Arturo Trevinos' Motion for Attorney's Fees (D.E. 285) and Motion to Enter Bill of Costs (D.E. 286), and Cesar Flores and Alvin King's Motion for Attorney's Fees (D.E. 290) and Motion to Enter Bill of Costs (D.E. 291).

The Court holds as follows:

With respect to Intervenors Maria and Arturo Trevino, is hereby ORDERED that the Trevinos shall recover $88,197.50 in attorney's fees based on their fraudulent lien claim under Tex. Civ. Prac. & Rem. Code 12.002(b) and $19,050.84 in taxable costs pursuant to Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920.

It is FURTHER ORDERED that, in the event of an unsuccessful appeal by the Clayton parties to any higher court, the Trevinos shall recover an additional eighty (80) hours in attorney's fees.[14]

With respect to Counter-Plaintiffs Cesar Flores and Alvin King, it is hereby ORDERED that Flores and King shall recover $377.00 in taxable costs pursuant to Fed. R. Civ. P. 54(d)(1).

It is FURTHER ORDERED that, should Flores and King take judgments based on their TDCA claim following appeal, they shall recover $80,772.25 in attorney's fees.

---

[14] The reduced hourly rates for the attorneys discussed above (maximum $350/hour) apply.

It is FURTHER ORDERED that, should Flores and King take judgments based on their RICO claim following appeal, they shall receive $80,772.25 in attorney's fees as well as $14,185.35 in non-taxable expenses.

SIGNED and ORDERED this 27th day of May, 2011.

Janis Graham Jack
United States District Judge